[No. S024618. Jan. 24, 1994.]

ALFREDO A., a Minor, etc., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Sue Robin Pollock and John Hamilton Scott, Deputy Public Defenders, for Petitioner.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

Grover C. Trask II, District Attorney (Riverside), and Gary B. Tranbarger, Deputy District Attorney, as Amici Curiae on behalf of Respondent.

Daniel E. Lungren, Attorney General, and Shirley A. Nelson, Deputy Attorney General, for Real Party in Interest.

## OPINION

**LUCAS, C. J.**—In *Gerstein* v. *Pugh* (1975) 420 U.S. 103 [43 L.Ed.2d 54, 95 S.Ct. 854] (hereafter *Gerstein*), the United States Supreme Court held that the Fourth Amendment requires a prompt judicial determination of "probable cause to believe the suspect has committed a crime" as a prerequisite to an extended pretrial detention following a warrantless arrest. (*Id.*, at pp. 114, 120 [43 L.Ed.2d at pp. 65, 69].) The court stopped short of mandating a specific timetable for making a "prompt" determination of probable cause.

In *County of Riverside* v. *McLaughlin* (1991) 500 U.S. 44 [114 L.Ed.2d 49, 111 S.Ct. 1661] (hereafter *McLaughlin*), the high court sought to further define the "promptness" requirement for making the probable cause determination mandated in *Gerstein*. The court held that, "Taking into account the competing interests articulated in *Gerstein*, we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." (*McLaughlin*, *supra*, 500 U.S. at p. 56 [114 L.Ed.2d at p. 63, 111 S.Ct. at p. 1670].)

Neither *Gerstein* nor *McLaughlin* was a juvenile detention case. In contrast, the United States Supreme Court's decision in *Schall* v. *Martin* (1984) 467 U.S. 253 [81 L.Ed.2d 207, 104 S.Ct. 2403] (hereafter *Schall*) did directly address the constitutional parameters of a key provision of New York State's *juvenile* pretrial detention statute. *Schall* was decided nine years after *Gerstein* but seven years prior to *McLaughlin*. *Schall*, and other decisions of the high court, make it abundantly clear that Fourth Amendment and related due process claims pertaining to the pretrial detention of juveniles following warrantless arrests for criminal activity cannot be viewed in the same light as similar challenges to adult detentions. This is so because, in the words of the Supreme Court, juvenile proceedings are "fundamentally different" from adult criminal proceedings, requiring that a "balance" be struck between the "informality" and "flexibility" that must of necessity inhere in juvenile proceedings, and the further requirement that those proceedings comport with the juvenile's constitutional rights, and the " 'fundamental fairness' demanded by the Due Process Clause." (*Schall*, *supra*, 467 U.S. at p. 263 [81 L.Ed.2d at p. 216].)

In July of 1991, the Los Angeles County Juvenile Court, after consultation with county counsel, adopted the "official position" that *McLaughlin*'s strict 48-hour rule does not apply in *juvenile* detention proceedings. We granted review in this case to determine whether that position passes constitutional muster, or whether *McLaughlin*'s 48-hour rule strictly applies to the

pretrial detention of adults and juveniles alike following warrantless arrest for criminal activity.[1]

It is beyond dispute that *Gerstein*'s constitutional requirement of a *prompt* judicial determination of probable cause for the extended pretrial detention of any person arrested without a warrant applies to juveniles as well as adults. However, for reasons to be explained, and having considered the comprehensive analysis the court invoked in *Schall* to scrutinize the constitutionality of the juvenile detention provisions there at issue, we have concluded that the high court did not intend that the strict 48-hour rule subsequently announced in *McLaughlin*—a ruling handed down in a case involving the pretrial detention of *adults*—should automatically apply in the juvenile detention setting. To conclude otherwise we would have to ignore the fundamental differences between adult and juvenile proceedings recognized in all of the high court's cases that have specifically addressed juvenile detention issues.

As will be explained, California's juvenile detention statutes basically afford juvenile detainees who have been arrested without a warrant a formal, adversarial "detention hearing" within 72 hours of a warrantless arrest, which proceeding incorporates the "probable cause" determination mandated under *Gerstein, supra*, 420 U.S. 103. The relevant statutes also prescribe various other procedures designed to ensure that an arrested juvenile will be released, in accordance with well-established and codified policies, at the earliest possible time following arrest, preferably to the custody of a parent or legal guardian. Given the fundamental difference in purpose and procedure between the treatment of adult and juvenile detainees, we have further concluded that *juvenile* detainees are constitutionally entitled to a judicial "probable cause" determination within 72 hours of arrest, consistent with the integrated provisions of our juvenile detention statutory scheme.

## I. FACTS AND PROCEDURAL HISTORY

On July 24, 1991, petitioner Alfredo A., a minor, was taken into custody without a warrant pursuant to Welfare and Institutions Code sections 602

---

[1]We filed our initial opinion in this case on May 4, 1993. Although neither party petitioned for a rehearing, we ordered a rehearing on the court's own motion in order to clarify the operative effect of our holding on "detention hearings" which are mandated under the provisions of Welfare and Institutions Code section 632, subdivision (a). All further statutory references are to this code unless otherwise indicated.

and 625[2] on suspicion of having possessed cocaine base for sale on that date. (Health & Saf. Code, § 11351.5.)

On July 25, 1991, petitioner sought his immediate release by filing a petition for a writ of habeas corpus in the Court of Appeal for the Second Appellate District. He based his challenge to his postarrest detention on the holding in *McLaughlin, supra*, 500 U.S. 44, alleging that he was a juvenile who had been arrested without a warrant the previous day for commission of a criminal offense, and that: "Pursuant to the Fourth Amendment to the United States Constitution, petitioner is entitled to a judicial determination of probable cause for his continued detention within 48 hours of his arrest. No such judicial determination has been made, and no determination will be made within the 48-hour period. This is because the Los Angeles County Superior Court, Juvenile Court, has adopted as its 'official position' that a juvenile is not entitled to such a prompt probable cause determination."

Several weeks prior to petitioner's arrest, the Presiding Judge of the Los Angeles County Juvenile Court sent a memorandum to all juvenile court judges, commissioners, and referees, indicating that county counsel had furnished the juvenile court with an opinion concluding that *McLaughlin*'s 48-hour rule does not apply in juvenile court proceedings. County counsel based that determination on the reasoning of *Schall, supra*, 467 U.S. 253, in which a New York juvenile "preventive detention" statute was found facially valid under the due process clause of the Fourteenth Amendment. The presiding judge and supervising judges thereafter unanimously agreed to adopt county counsel's position as the Los Angeles County Juvenile Court's "offical position."

By an order to show cause filed the following day, the Court of Appeal determined to treat the petition for a writ of habeas corpus as a petition for a writ of mandate, and directed respondent Los Angeles County Superior Court to show cause why a peremptory writ of mandate should not issue ordering that judicial probable cause determinations for the extended post-arrest detention of juveniles be made within 48 hours of their arrest.

On that same day, July 26, 1991, a wardship petition was filed in the juvenile court alleging petitioner came within the provisions of section 602

---

[2]Section 602 provides, in pertinent part: "Any person who is under the age of 18 years when he violates any law of this state . . . , is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

Section 625 provides, in relevant part: "A peace officer may, without a warrant, take into temporary custody a minor: [¶] (a) Who is under the age of 18 years when such officer has reasonable cause for believing that such minor is a person described in Section . . . 602 . . . ."

by having violated Health and Safety Code sections 11351 and 11351.5 on July 24, 1991. However, when petitioner appeared in court on the next "judicial day" (July 29, 1991), no detention report was provided to the juvenile court in preparation for the detention hearing, and petitioner was ordered immediately released. He thereafter waived the statutory time limitations for arraignment.

In the mandamus proceeding, petitioner acknowledged that his release after spending five days in custody rendered the petition moot as to him. The Court of Appeal nonetheless determined to hear and decide petitioner's systemic challenge to the juvenile court's "official position," concluding that similar claims had proved "capable of repetition, yet evading review" because "review usually takes longer than the [challenged] temporary detention . . . ." (See *Schall, supra,* 467 U.S. at p. 256, fn. 3 [81 L.Ed.2d at p. 212]; *Gerstein, supra,* 420 U.S. at pp. 110-111, fn. 11 [43 L.Ed.2d at p. 63].)

In its opinion, the Court of Appeal reviewed the relevant provisions of the Welfare and Institutions Code governing pretrial detention of juvenile arrestees. After determining that the juvenile detention issue in this case must be evaluated in light of the constitutional analysis conducted in *Schall, supra,* 467 U.S. 253, the court concluded that California's statutory postarrest juvenile detention scheme withstands constitutional scrutiny, reasoning that: "[The] statutes provide procedural safeguards that accommodate the individual's right to liberty and the state's duty to control crime. They reflect the balance that must be struck between the informality and flexibility of juvenile proceedings even as they comport with the fundamental fairness required by due process. The statutory scheme protects a minor's right to freedom, consistent with the state interest in protecting the minor and society." Implicit in these conclusions was the court's rejection of petitioner's claim that *McLaughlin*'s strict 48-hour rule applies to juvenile as well as adult postarrest detention proceedings.

## II. Discussion

### A. *Mootness of Petitioner's Claim*

■ As noted, petitioner acknowledges that his release after spending five days in pretrial custody has technically rendered this proceeding moot as to him. The Court of Appeal nevertheless determined to hear and decide the claim. We agree that the issue, as presented in this case, is ripe for resolution. The high court reached a similar conclusion in *Schall* and *Gerstein*:

"Although the pretrial detention of the class representatives has long since ended, . . . this case is not moot for the same reason that the class action in

*Gerstein* v. *Pugh*, 420 U.S. 103, 110, [f]n. 11 (1975) [43 L.Ed.2d 54, 63, 95 S.Ct. 854], was not mooted by the termination of the claims of the named plaintiffs. 'Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly "capable of repetition, yet evading review." ' " (*Schall*, *supra*, 467 U.S. at p. 256, fn. 3 [81 L.Ed.2d at p. 212].)

### B. *Relevant Statutory Provisions*

In order to meaningfully examine and apply the controlling constitutional principles and case law, we need a brief overview of the relevant statutory provisions that govern juvenile detentions following warrantless arrests in California.

Under our juvenile criminal justice system, a peace officer can take a minor into temporary custody for violating a federal or state law, or a local ordinance. (§§ 602, 625, subd. (a); see, *ante*, at p. 1217, fn. 2.) When a minor is arrested and detained on suspicion of having committed a crime, the minor is not formally "charged" with the crime in the sense that adult arrestees are criminally prosecuted. Rather, a determination is made whether to commence wardship proceedings with the filing of a petition by the prosecuting attorney pursuant to section 602. (§ 650, subd. (c).)

Various official functions must be performed at the time of the juvenile's arrest, and within the initial 24- to 48-hour period following the arrest—all patently designed to ensure that the detained minor is afforded every reasonable opportunity for his or her immediate release, preferably to a parent or guardian.

Hence, the arresting officer may release the minor outright (§ 626, subd. (a)), deliver him or her to a public or private shelter facility in contract with the city or county to provide shelter care, counseling, or diversion services to such minors (*id.*, subd. (b)), or release the minor on his or her written promise to appear before a county juvenile probation officer, or to a parent, guardian, or other responsible relative, who may also be required to execute a written promise to appear along with the minor (*id.*, subd. (c)). If the arresting officer elects instead to deliver custody of the minor directly to the county probation officer, the officer must prepare a concise, written statement of the probable cause for taking the minor into temporary custody, to

be furnished along with custody of the minor to the juvenile probation officer within 24 hours of the initial detention following the arrest. (*Id.*, subd. (d).)

The policy underlying this choice of dispositions provided for in section 626 is expressly set forth in the statute: "In determining which disposition of the minor to make, *the officer shall prefer the alternative which least restricts the minor's freedom of movement*, provided that alternative is compatible with the best interests of the minor and the community." (§ 626, italics added.)

When custody of the minor is transferred to a probation officer at a juvenile hall or any other place of confinement, the detaining officer is further required to "take immediate steps to notify the minor's parent, guardian, or responsible relative that such minor is in custody and the place where he is being held." (§ 627, subd. (a).)

Section 628 requires the juvenile probation officer to "immediately investigate the circumstances of the minor and the facts surrounding his being taken into custody," and further requires the officer to "immediately release the minor to the custody of his parent, guardian, or responsible relative unless one or more . . . [specified] conditions exist . . . ." (See *post*, at pp. 1221-1222.)

Like the arresting officer, the county juvenile probation officer is empowered with discretion at the intake-investigatory stage to "adjust the situation which brings the minor within the jurisdiction [or probable jurisdiction] of the court" by "delineat[ing] specific programs of supervision for the minor," or referring the case to another agency, arranging for informal supervision, or requesting the district attorney to prepare a wardship petition for filing. (§ 654.)

A minor taken into custody must be released within 48 hours, excluding "nonjudicial days," unless a wardship petition is filed within that initial 48-hour period. (§ 631, subd. (a).) If a section 602 petition is filed, the minor must be afforded a formal, adversarial "detention hearing" in juvenile court "as soon as possible but in any event [no later than] the expiration of the next judicial day after a petition to declare the minor a ward . . . has been filed"—i.e., 48 to 72 hours after arrest (excluding "nonjudicial days"). (§ 632, subd. (a).)

If the offense for which the minor is taken into custody is "a misdemeanor that does not involve violence, the threat of violence, or possession or use of

a weapon, and if the minor is not currently on probation or parole," then the minor must be released within 48 hours after having been taken into custody (again, excluding "nonjudicial days") unless a wardship petition is filed *and* "the minor has been ordered detained by a judge or referee of the juvenile court pursuant to Section 635" within that initial 48-hour period. (§ 631, subd. (b).)

Most significantly, when a minor is detained on suspicion of criminal activity, in contrast to an adult detained under similar circumstances, the inquiry into the propriety of the extended detention is much broader in scope than a determination, in the strict Fourth Amendment sense, of whether "factual" probable cause exists to believe the minor committed the crime for which he was taken into custody. Section 628 lists seven "conditions," one or more of which must be found to exist in order to warrant detaining the minor and scheduling a detention hearing within 72 hours of his or her arrest (again, excluding "nonjudicial" days). These conditions include whether:

"(1) The minor is in need of proper and effective parental care or control and has no parent, guardian, or responsible relative; or has no parent, guardian, or responsible relative willing to exercise or capable of exercising such care or control; or has no parent, guardian, or responsible relative actually exercising such care or control.

"(2) The minor is destitute or is not provided with the necessities of life or is not provided with a home or suitable place of abode.

"(3) The minor is provided with a home which is an unfit place for him by reason of neglect, cruelty, depravity or physical abuse of either of his parents, or of his guardian or other person in whose custody or care he is.

"(4) Continued detention of the minor is a matter of immediate and urgent necessity for the protection of the minor or reasonably necessary for the protection of the person or property of another.

"(5) The minor is likely to flee the jurisdiction of the court.

"(6) The minor has violated an order of the juvenile court.

"(7) The minor is physically dangerous to the public because of a mental or physical deficiency, disorder or abnormality." (§ 628, subd. (a).)

Section 635 sets forth the factors to be considered by the juvenile court at the detention hearing, and the standard the court must apply, in evaluating

the probation officer's findings pursuant to section 628 and determining whether to continue the minor's detention or order his or her release from custody. The section provides:

"The court will examine such minor, his parent, guardian, or other person having relevant knowledge, hear such relevant evidence as the minor, his parent or guardian or their counsel desires to present, and, unless it appears that such minor has violated an order of the juvenile court or has escaped from the commitment of the juvenile court or that it is a matter of immediate and urgent necessity for the protection of such minor or reasonably necessary for the protection of the person or property of another that he be detained or that such minor is likely to flee to avoid the jurisdiction of the court, the court shall make its order releasing such minor from custody. [¶] The circumstances and gravity of the alleged offense may be considered, in conjunction with other factors, to determine whether it is a matter of immediate and urgent necessity for the protection of the minor or reasonably necessary for the protection of the person or property of another that the minor be detained." (§ 635.)

The minor and his or her parent or guardian have the right to be represented by counsel at every stage of the detention proceedings. (§ 633.) If the minor or the parent or guardian is indigent or cannot otherwise afford an attorney, counsel will be appointed by the court. (§ 634.) In any case in which it appears to the court that there is a conflict of interest between a parent or guardian and the minor, separate counsel may be appointed for the minor and the parent or guardian. (*Ibid.*)

As is evident from the foregoing summary of the relevant statutory provisions, the determination whether to detain a *minor* following a warrantless arrest for criminal activity is a complex one, requiring consideration of various factors personal to the minor and his family situation (§ 628), and the application of several important statutory presumptions favoring the minor's early release to a parent, guardian or responsible relative (§§ 626, 628, 631, subd. (a)), or, if extended detention is warranted, selection of the detention alternative most "compatible with the best interests of the minor . . . ," and "which least restricts the minor's freedom of movement" (§ 626). These presumptions, and the policies they implement, are unique to juvenile detention proceedings and are *not* implicated when a judicial determination is made whether factual probable cause exists to extend the detention of an adult arrestee.

Bearing these distinctions in mind, we turn next to the opinions in *Gerstein, supra,* 420 U.S. 103 [43 L.Ed.2d 54, 95 S.Ct. 854], *Schall, supra,* 467 U.S. 253 [81 L.Ed.2d 207, 104 S.Ct. 2403], *McLaughlin, supra,* 500

U.S. 44, and, most recently, *Reno* v. *Flores* (1993) 507 U.S. __ [123 L.Ed.2d 1, 113 S.Ct. 1439] (hereafter *Flores*), to see if those decisions will support an inference that the high court intended the strict 48-hour rule announced in *Mclaughin* to apply in juvenile detention proceedings.

C. *Applicability of McLaughlin's 48-Hour Rule to Juvenile Detention Proceedings*

In *Gerstein, supra*, 420 U.S. 103, the United States Supreme Court held unconstitutional Florida procedures under which persons arrested without a warrant could be kept in police custody for 30 days or more without a probable cause determination. The court held that the Fourth Amendment requires a prompt judicial determination of "probable cause to believe the suspect has committed a crime" as a prerequisite to an extended pretrial detention following a warrantless arrest. (*Id.*, at pp. 114, 120 [43 L.Ed.2d at pp. 65, 69].)

In *McLaughlin, supra*, 500 U.S. 44, the court reiterated some of the competing policy concerns underlying its earlier holding in *Gerstein*:

"In reaching this conclusion we attempted to reconcile important competing interests. On the one hand, States have a strong interest in protecting public safety by taking into custody those persons who are reasonably suspected of having engaged in criminal activity, even where there has been no prior opportunity for a prior judicial determination of probable cause. 420 U.S., at 112 [43 L.Ed.2d at page 64]. On the other hand, prolonged detention based on incorrect or unfounded suspicion may unjustly 'imperil [a] suspect's job, interrupt his source of income, and impair his family relationships.' *Id.*, at 114 [43 L.Ed.2d at page 65]. We sought to balance these competing concerns by holding that States 'must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before *or promptly after* arrest.' *Id.*, at 125 [43 L.Ed.2d at pages 71-72] (emphasis added).

"[We] thus established a 'practical compromise' between the rights of individuals and the realities of law enforcement. *Id.*, at 113 [43 L.Ed.2d at page 65]. Under *Gerstein*, warrantless arrests are permitted but persons arrested without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause. *Id.*, at 114 [43 L.Ed.2d at page 65]. Significantly, the Court stopped short of holding that

jurisdictions were constitutionally compelled to provide a probable cause hearing immediately upon taking a suspect into custody and completing booking procedures. We acknowledged the burden that proliferation of pretrial proceedings places on the criminal justice system and recognized that the interests of everyone involved, including those persons who are arrested, might be disserved by introducing further procedural complexity into an already intricate system. *Id.*, at 119-123 [43 L.Ed.2d at pages 68-71]. Accordingly, we left it to the individual States to integrate prompt probable cause determinations into their differing systems of pretrial procedures. *Id.*, at 123-124 [43 L.Ed.2d at pp. 70-71]." (*McLaughlin, supra*, 500 U.S. at p. 53 [114 L.Ed.2d at pp. 60-61, 111 S.Ct. at p. 1668].)

In *Gerstein*, the court explained that the Fourth Amendment does not require that the arrestee be afforded the "full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses" in connection with a judicial determination of probable cause. (*Gerstein, supra*, 420 U.S. at p. 119 [43 L.Ed.2d at p. 68].) The court delineated the scope of that determination as follows: "The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. . . . The standard is the same as that for arrest. That standard—probable cause to believe the suspect has committed a crime—traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony . . . ." (*Id.*, at p. 120 [43 L.Ed.2d at p. 69], fn. omitted.)

In contrast, the constitutional parameters of *juvenile* detentions were directly at issue in *Schall, supra*, 467 U.S. 253, a case decided nine years after *Gerstein, supra*, 420 U.S. 103. In *Schall*, the court found the juvenile "preventive detention" provisions of the New York Family Court Act facially valid under the due process clause of the Fourteenth Amendment. The New York statute authorized the detention of a juvenile arrested for the commission of a crime when there is a "serious risk" the juvenile "may before the return date commit an act which if committed by an adult would constitute a crime." (*Schall, supra*, 467 U.S. at p. 255 [81 L.Ed.2d at p. 211], fn. omitted.)

Whereas the sole issue in *Gerstein* was whether there was factual probable cause to detain the adult arrestee pending further proceedings—i.e., the same standard as that for arrest: "probable cause to believe the suspect has committed a crime" (*Gerstein, supra*, 420 U.S. at p. 120 [43 L.Ed.2d at p. 69])—*Schall* makes it abundantly clear that, where *juvenile* detentions are concerned, such a factual probable cause determination *is but one component* of the broader inquiry implicated in the determination whether to extend the

pretrial detention of a juvenile arrested without a warrant for criminal activity.

In *Schall*, three juveniles were detained for more than six days before being afforded a "probable cause" hearing—the functional equivalent of a "detention hearing"—pursuant to the provisions of the New York Family Court Act. (*Schall, supra*, 467 U.S. at pp. 257-260 [81 L.Ed.2d at pp. 212-214].) The juveniles were brought before the family court for an "initial appearance" within one day following their arrests. (*Ibid.*) Under New York law, at the "initial appearance" the family court judge makes a preliminary determination as to the jurisdiction of the court, appoints counsel, and advises the minor of his or her rights. (*Id.*, at pp. 257-258, fn. 5 [81 L.Ed.2d at pp. 212-213].) If the family court is not in session, the "initial appearance" must be conducted "within 72 hours or the next day the court is in session, whichever is sooner." (*Schall, supra*, 467 U.S. at pp. 257-258, fn. 5 [81 L.Ed.2d at pp. 212-213], refering to the New York Family Court Act, § 307.3(4).)

The high court first explained in *Schall*: "There is no doubt that the Due Process Clause is applicable in juvenile proceedings. 'The problem,' we have stressed, 'is to ascertain the precise impact of the due process requirement upon such proceedings.' *In re Gault*, 387 U.S. 1, 13-14 [18 L.Ed.2d 527, 538-539, 87 S.Ct. 1428] (1967). We have held that certain basic constitutional protections enjoyed by adults accused of crimes also apply to juveniles. See *id.*, at 31-57 [18 L.Ed.2d at pages 548-563] (notice of charges, right to counsel, privilege against self-incrimination, right to confrontation and cross-examination); *In re Winship*, 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068] (1970) (proof beyond a reasonable doubt); *Breed* v. *Jones*, 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779] (1975) (double jeopardy). But the Constitution does not mandate elimination of all differences in the treatment of juveniles. See, *e.g.*, *McKeiver* v. *Pennsylvania*, 403 U.S. 528 [29 L.Ed.2d 647, 91 S.Ct. 1976] (1971) (no right to jury trial). The State has 'a *parens patriae* interest in preserving and promoting the welfare of the child,' *Santosky* v. *Kramer*, 455 U.S. 745, 766 [71 L.Ed.2d 599, 615, 102 S.Ct. 1388] (1982), which makes a juvenile proceeding fundamentally different from an adult criminal trial. We have tried, therefore, to strike a balance—to respect the 'informality' and 'flexibility' that characterize juvenile proceedings, *In re Winship, supra*, at 366 [25 L.Ed.2d at page 377], and yet to ensure that such proceedings comport with the 'fundamental fairness' demanded by the Due Process Clause. *Breed* v. *Jones, supra*, at 531 [44 L.Ed.2d at page 356]; *McKeiver, supra*, at 543 [29 L.Ed.2d at pages 659-660] (plurality opinion)." (*Schall, supra*, 467 U.S. at p. 263 [81 L.Ed.2d at p. 216].)

The court in *Schall* did initially indicate, in a footnote to its opinion, that the propriety of any detention "prior to a juvenile's initial appearance in Family Court" was not directly at issue in that case. (*Schall, supra*, 467 U.S.

at pp. 257-258, fn. 5 [81 L.Ed.2d at pp. 212-213].) This was so because the petitioners had been afforded an "initial appearance," and therefore were not directly challenging the period of detention from arrest until their first appearance in court. But one must read on in *Schall*, for the high court had elected to decide the class members' facial challenge to the constitutionality of the New York juvenile preventive detention statute even though petitioners' individual cases were moot due to their release from custody. (*Schall, supra*, 467 U.S. at p. 256, fn. 3 [81 L.Ed.2d at p. 212].) The court then went on to consider the "initial appearance" requirement along with the other procedural components of the statutory juvenile detention scheme. Acknowledging that the "initial appearance" could be adjourned *for up to 72 hours*, and that "the Family Court judge is not required to make a finding of probable cause at the initial appearance,"[3] the court nevertheless concluded that the lack of a requirement that factual probable cause be determined at the "initial appearance" "[did] not, under the circumstances, amount to a deprivation of due process." (*Schall, supra*, 467 U.S. at pp. 275-276, and fn. 27 [81 L.Ed.2d at pp. 224-225].)

The high court went on to explain that New York's preventive detention statute served the dual legitimate state objectives of protecting both society and the juvenile from the hazards of further criminal activity, by undertaking enforcement of the criminal law for the sake and protection of the community generally, while also serving as *parens patriae* for the benefit of the minor-detainee. (*Schall, supra*, 467 U.S. at pp. 264-274 [81 L.Ed.2d at pp. 216-224].) The court ultimately concluded the procedural protections afforded postarrest juvenile detainees under the New York statute satisfied the requirements of the due process clause of the Fourteenth Amendment, and found the statutory scheme facially valid. (*Ibid.*)

For purposes of responding to petitioner's Fourth Amendment claim in this case, it is important to note that the high court in *Schall*, in scrutinizing the constitutional claims of the class members therein, examined all the procedural components of New York's statutory scheme—the "initial appearance" requirement (for appointment of counsel and advisement of rights); the formal "probable cause" hearing that followed 72 hours thereafter (analogous to our "detention hearing"); and the "factfinding hearing" (analogous to our "jurisdictional hearing")—and concluded that, taken together, they comprised "[such] flexible procedures [as] have been found constitutionally adequate *under the Fourth Amendment*, see *Gerstein* v. *Pugh* [*supra*, 420 U.S. 103], *and* under the Due Process Clause, see *Kent* v. *United*

---

[3]At the "initial appearance," the *juvenile* was entitled to challenge the sufficiency of the delinquency petition, thereby raising the issue of probable cause. (*Schall, supra*, at pp. 275-276 [81 L.Ed.2d at pp. 224-225].) This fact, however, does not appear essential to *Schall's* analysis. The *Schall* majority emphasized that postponement of a probable-cause determination until the formal, adversarial probable-cause hearing did not offend due process. Moreover, as noted, the *Schall* majority expressed no concern that the "initial appearance" could itself be postponed for up to 72 hours after the juvenile's arrest.

States [(1966) 383 U.S. 541], at 557 [16 L.Ed.2d 84, 95, 86 S.Ct. 1045]." (*Schall, supra*, 467 U.S. at p. 277 [81 L.Ed.2d at p. 225], italics added.)[4]

Seven years after *Schall* was decided, the high court decided *McLaughlin, supra*, 500 U.S. 44. The court set out in *McLaughlin* to further define the "promptness" requirement for making the Fourth Amendment probable cause determination required under *Gerstein*. The court concluded: "[A] jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." (*McLaughlin, supra*, 500 U.S. at p. 56 [114 L.Ed.2d at p. 63, 111 S.Ct. at p. 1670].)

Unlike *Schall*, the facts in *McLaughlin* did not present the court with an opportunity to reach or discuss the Fourth Amendment probable cause requirement in the specific context of *juvenile* detention proceedings. Critically, the court had no occasion in *McLaughlin* to consider the fundamental necessity, in the administration of *juvenile* criminal justice systems, to "strike a balance . . . respect[ing] the 'informality' and 'flexibility' that characterize juvenile proceedings [citation] . . . [while ensuring] that such proceedings comport with the 'fundamental fairness' demanded by the Due Process Clause. [Citations.]." (*Schall, supra*, 467 U.S. at p. 263 [81 L.Ed.2d at p. 216].)

Most recently, however, the high court had the opportunity, in a post-*McLaughlin* case, to reaffirm some of the constitutional principles found relevant to juvenile detentions in *Schall*. In *Flores, supra*, 507 U.S. __ [123 L.Ed.2d 1], a class of alien juveniles who had been arrested by the Immigration and Naturalization Service (hereafter INS) on suspicion of being deportable were detained pending deportation hearings pursuant to a regulation (8 C.F.R. § 242.24 (1992)) providing for the release of detained minors only to their parents, close relatives, or legal guardians, except in unusual and compelling circumstances. Pursuant to a consent decree entered into in the litigation, juveniles who were not released under the regulation's provisions had to be placed in juvenile care facilities that met or exceeded state licensing requirements for the provision of such services to dependent

---

[4]This court has likewise observed that in the context of juvenile wardship proceedings, a minor's constitutional right to be free from unreasonable searches, seizures and arrests derives not only from the guarantee of freedom from unreasonable searches and seizures embodied in the Fourth Amendment to the United States Constitution and article I, section 13, of the California Constitution, but also from the minor's constitutional rights to privacy, and the guarantee under the Fourteenth Amendment against deprivation of liberty without due process of law. (See, e.g., *In re William G.* (1985) 40 Cal.3d 550, 557 [221 Cal.Rptr. 118, 709 P.2d 1287], and cases cited; *Skelton v. Superior Court* (1969) 1 Cal.3d 144, 149 [81 Cal.Rptr. 613, 460 P.2d 485].)

children. The juvenile class members in *Flores* contended they had a right under the federal Constitution and immigration laws to be routinely released into the custody of other "responsible adults."

Relying on principles reiterated in its earlier opinions in *Santosky v. Kramer* (1982) 455 U.S. 745 [71 L.Ed.2d 599, 102 S.Ct. 1388] and *Schall, supra,* 467 U.S. 253, the court reaffirmed that the state's *parens patriae* interest in "preserving and promoting the welfare of the child" (*Santosky v. Kramer, supra,* 455 U.S. at p. 766 [71 L.Ed.2d at p. 615]) renders juvenile proceedings fundamentally different from adult criminal proceedings. The court once again emphasized that " 'juveniles, unlike adults, are always in some form of custody,' *Schall, supra,* [467 U.S.] at 265, and where the custody of the parent or legal guardian fails, the government may (indeed, we have said *must*) either exercise custody itself or appoint someone else to do so. *Ibid.*" (*Flores, supra,* 507 U.S. at p. __ [123 L.Ed.2d at p. 17], italics in original.)

The high court in *Flores* therefore rejected the respondent class members' "procedural due process" claim under the Fifth Amendment.[5] The court's conclusions regarding the constitutionality of the INS juvenile detention procedures under scruntiny in that case bear repeating here, for they reinforce our conclusion that the high court's analysis that gave rise to the strict 48-hour rule announced in *McLaughlin* does not, in isolation, adequately address all of the constitutional concerns that arise in juvenile postarrest detention cases.

The court in *Flores* explained that the deportation process ordinarily begins with a warrantless arrest by an INS officer who has reason to believe that the arrestee is in the United States in violation of an immigration law or regulation and is likely to escape before a warrant can be obtained. (*Flores, supra,* 507 U.S. at p. __ [123 L.Ed.2d at p. 20].) Arrested aliens are almost always offered the choice of departing the country voluntarily, and the great majority apparently take that course. By statute, however, before the INS can seek execution of a voluntary departure form by a *juvenile* arrestee, the juvenile must communicate with either a parent, adult relative, or friend, or with an organization found on the free legal services list. If the juvenile does not seek voluntary departure, the relevant statutes require that he or she be brought before an INS examining officer within 24 hours of his or her arrest.

---

[5] The due process claim in *Flores* arose under the Fifth Amendment because aliens have a right to due process of law at deportation proceedings under the Fifth Amendment. (*Flores, supra,* 507 U.S. at p. __ [123 L.Ed.2d at pp. 19-20]; see *The Japanese Immigrant Case* (1903) 189 U.S. 86, 100-101 [47 L.Ed. 721, 725-726, 23 S.Ct. 611].) The discussion of Fifth Amendment procedural due process in *Flores* is functionally analogous to the Fourteenth Amendment procedural due process discussed in *Schall.*

The "examining officer" must be someone other than the arresting officer, but is still a staff member of the INS's enforcement division, and is *not* a judge or magistrate. If the examiner finds prima facie evidence that the arrested alien is illegally in the United States, a formal deportation hearing is initiated through the issuance of an order to show cause, and within 24 hours the decision is made whether to continue the alien juvenile in custody or to release him. (*Ibid.*)

The INS must notify the alien juvenile of the commencement of a deportation proceeding, and of the decision as to custody, by serving a written form notice in English and Spanish. The front of the form notifies the alien of the allegations against him or her and the date of his or her deportation hearing. The back contains a section entitled "Notice of Custody Determination," in which the *INS officer* checks a box indicating whether the alien will be detained in the custody of the INS, released on his or her own recognizance, or released under bond. The form also advises the alien that he or she may request the "Immigration Judge" to redetermine the custody decision. The "Immigration Judge" is a quasi-judicial officer in the Executive Office for Immigration Review, a division "separated" from the INS enforcement staff. The alien juvenile must check one of two boxes, indicating he or she does or does not seek such review, and sign and date the form. If the alien requests a hearing before the "Immigration Judge" and is dissatisfied with the outcome, he or she may obtain further review by the Board of Immigration Appeals, and by the federal courts. (*Flores, supra*, 507 U.S. at pp. __–__ [123 L.Ed.2d at pp. 20-21].)

The high court in *Flores* rejected the conclusion of the United States District Court and the in bank Court of Appeals for the Ninth Circuit that the INS procedures are flawed because they do not provide for automatic review by an "Immigration Judge" of the initial deportability and custody determinations. The court explained: "At least insofar as this facial challenge is concerned, due process is satisfied by giving the detained alien juveniles the *right* to a hearing before an immigration judge." (*Flores, supra*, 507 U.S. at p. __ [123 L.Ed.2d at p. 21], italics in original.) The court further rejected respondents' contention that the regulations were infirm because they failed to set forth a time period within which the hearing before the "Immigration Judge," when requested, must be held. (*Ibid.*)

In rejecting respondents' further claim that "the regulation is an abuse of discretion because it permits the INS, once having determined that an alien juvenile lacks an available relative or legal guardian, to hold the juvenile indefinitely," the court explained: "That is not so. The period of custody is inherently limited by the pending deportation hearing, which must be concluded with 'reasonable dispatch' to avoid habeas corpus. 8 U.S.C.

§ 1252(a)(1); cf. [*United States* v. *Salerno*], 481 U.S. 739, 747 [95 L.Ed.2d 697, 708-709] (1987) (noting time limits placed on pretrial detention by the Speedy Trial Act). It is expected that alien juveniles will remain in INS custody an average of only 30 days [under the terms of the consent decree] . . . . There is no evidence that alien juveniles are being held for undue periods pursuant to regulation 242.24 [8 C.F.R. § 242.24 (1992)], or that habeas corpus is insufficient to remedy particular abuses." (*Flores, supra,* 507 U.S. at p. __ [123 L.Ed.2d at pp. 24-25], fn. omitted.)

The court concluded in *Flores*: "We think the INS policy now in place is a reasonable response to the difficult problems presented when the Service arrests unaccompanied alien juveniles. It may well be that other policies would be even better, but 'we are [not] a legislature charged with formulating public policy.' *Schall* v. *Martin*, 467 U.S. at 281 [81 L.Ed.2d at page 228]. On its face, INS regulation 242.24 accords with both the Constitution and the relevant statute." (*Flores, supra,* 507 U.S. at p. __ [123 L.Ed.2d at p. 25].)

We recognize, of course, that the holding in *Flores* is of limited precedential value here, since that case arose under the due process clause of the Fifth Amendment (but see *ante,* at p. 1228, fn. 4), involved a class of deportable juvenile *aliens* who may not have enjoyed the same Fourth Amendment rights as juvenile citizens (see *United States* v. *Verdugo-Urquidez* (1990) 494 U.S. 259, 265-275 [108 L.Ed.2d 222, 233-239, 110 S.Ct. 1056]), and involved the interpretation of immigration statutes as well as the terms of a consent decree. We nonetheless believe that the underpinnings of the high court's constitutional analysis in *Flores, supra,* 507 U.S. __ [123 L.Ed.2d 1], and its express reliance in that case on several of the basic principles pertaining to juvenile detentions discussed in *Schall, supra,* 467 U.S. 253, reinforce our conclusion that, in the context of juvenile detention proceedings, the high court would not today find rigid application of the 48-hour rule of *McLaughlin, supra,* 500 U.S. 44, compelled under a strict application of Fourth Amendment principles.

We emphasize that we do not today suggest a juvenile arrestee facing postarrest detention has no Fourth Amendment liberty interest in a prompt determination of the legal cause for his or her extended detention. The Fourth Amendment principles at the core of the holding in *Gerstein, supra,* 420 U.S. 103, apply to juveniles as well as adults. The high court expressly reaffirmed as much eight years ago in *Schall, supra,* 467 U.S. at pages 264, 276-277, and fn. 27 [81 L.Ed.2d at pages 217, 224-225]. Indeed, although the court in *Schall* twice characterized its earlier holding in *Gerstein* to be "that a judicial determination of probable cause is a prerequisite to any

extended restraint on the liberty of an *adult* accused of crime" (*Schall, supra*, 467 U.S. at pp. 274-275 [81 L.Ed.2d at p. 224], italics added), we think that such characterization cannot, in reason or fairness, be understood as an attempt by the court to limit the fundamental principles announced in *Gerstein* solely to adult detentions. The court subsequently made it clear in *Schall* that children have a protected liberty interest in "freedom from institutional restraints." (*Id.*, at p. 265 [81 L.Ed.2d at p. 217]; see *In re Gault* (1967) 387 U.S. 1, 27 [18 L.Ed.2d 527, 545-546, 87 S.Ct. 1428].)

California's postarrest juvenile detention statutes are plainly designed to protect the arrested minor's Fourth Amendment rights. The arresting officer must, within 24 hours of the arrest, prepare a written summary of the probable cause for taking the minor into temporary custody. (§ 626, subd. (d).) In contrast to adult criminal proceedings, the statutory presumptions *require* "immediate release" of the minor to the custody of his or her parents or legal guardian unless specific factors warranting extended detention are found to exist. (§ 628.) Even when such factors supportive of further detention are found to exist, the juvenile arrestee must nonetheless be released within 48 hours unless a wardship petition is filed within that initial 48-hour period. (§ 631, subd. (a).) And, if a wardship petition is filed, a formal, adversarial detention hearing, which incorporates a probable cause determination, and at which counsel is provided for both the minor and his parents or guardian, must be conducted "as soon as possible but in any event [no later than] the expiration of the next judicial day after a petition to declare the minor a ward . . . has been filed" (i.e., no later than 72 hours after arrest, excluding "nonjudicial days"). (§ 632, subd. (a).) At that detention hearing, the juvenile court will consider "[t]he circumstances and gravity of the alleged offense" in determining whether extended pretrial detention is warranted under all the facts and circumstances. (§ 635.)

In light of the foregoing, we therefore conclude that the United States Supreme Court's adoption of the strict 48-hour rule in *McLaughlin, supra*, 500 U.S. 44, was neither foreseen nor intended by that court to be rigidly operable in juvenile postarrest detention proceedings. Given the fundamental differences between juvenile and adult detention proceedings recognized in a long line of that court's decisions, we will not infer otherwise, absent an express and definitive ruling from the high court to the contrary.

As has been shown, our Legislature, in its wisdom, has enacted a comprehensive statutory scheme governing postarrest juvenile detention that is designed to implement specific policies and procedures deemed to be in the juvenile detainees' best interests, while balancing their fundamental constitutional rights against the well-recognized need for "informality" and "flexibility" in juvenile criminal justice systems. (*Schall, supra*, 467 U.S. at p.

263 [81 L.Ed.2d at p. 216].) Our juvenile courts, of course, are duty bound to comply with both constitutional and statutory requirements. Having examined the integrated components of California's juvenile detention statutes, we conclude that the Constitution, as interpreted by the United States Supreme Court's pertinent decisions reviewed herein, requires no more than that *juvenile* arrestees be afforded a judicial determination of "probable cause" for any postarrest detention extending beyond the 72-hour period immediately following a warrantless arrest.

 In light of these conclusions, it follows that the formal detention hearing provided for in section 632, subdivision (a), may also serve to fulfill the constitutional requirement when the court at such a hearing, *where it is held within 72 hours of the juvenile's arrest*, makes a determination that sufficient probable cause exists for the extended postarrest detention of the juvenile. Consistent with our analysis and conclusions herein, if the 72-hour period immediately following arrest includes one or more "nonjudicial days," such that the juvenile court is unable or unwilling to provide a full statutory detention hearing within that period, then the Constitution independently requires that the juvenile be afforded a separate, timely judicial determination of probable cause for any extended period of detention beyond the 72 hours following arrest.[6]

### III. CONCLUSION

The judgment of the Court of Appeal is affirmed.

Panelli, J., and Baxter, J., concurred.

**ARABIAN, J.,** Concurring and Dissenting.—I concur in the lead opinion insofar as it requires prompt probable cause determinations for juveniles within 72 hours of warrantless arrest. (See lead opn., *ante*, this page.) I respectfully dissent, however, from the due process analysis by which the lead opinion reaches this conclusion. Petitioner does not dispute his postarrest detention on that basis; nor does he raise such a challenge to any provision of the juvenile court law governing wardship detentions in general (Welf. & Inst. Code, § 602 et seq.). Rather, he asserts that, like any adult in comparable circumstances, a detained minor is entitled to a probable cause determination of suspected criminal activity within 48 hours of a

---

[6]We note further that, in 1992, the Legislature added subdivision (c) to Code of Civil Procedure section 134, which specifically provides: "In any superior, municipal, or justice court, one or more departments of the court may remain open and in session for the transaction of any business which may come before the department in the exercise of the civil or criminal jurisdiction of the court, or both, on a judicial holiday or at any hours of the day or night, or both, as the judges of the court prescribe." (Stats. 1992, ch. 460, § 2.)

warrantless arrest as mandated by the United States Supreme Court's decision in *County of Riverside* v. *McLaughlin* (1991) 500 U.S. 44 [114 L.Ed.2d 49, 111 S.Ct. 1661] (*McLaughlin*). As framed by petitioner, the only issue before us is whether the rule of *McLaughlin* applies to juveniles.[1] Accordingly, we are constrained to refract his contentions solely through a Fourth Amendment prism, for that is the limited nature of the constitutional claim. (Cf. *Gerstein* v. *Pugh* (1975) 420 U.S. 103, 111 [43 L.Ed.2d 54, 63, 95 S.Ct. 854] ["Both the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common-law antecedents."].) The specificity of the question demands an equally precise answer, not the due process circuity submitted in the lead opinion. (See, e.g., *New Jersey* v. *T.L.O.* (1985) 469 U.S. 325 [83 L.Ed.2d 720, 105 S.Ct. 733] [4th Amend. search and seizure claim].)

While I agree with Justice Mosk that we should pursue a Fourth Amendment tack in resolving this case, I conclude that for juvenile detainees a probable cause determination within 72 hours satisfies the constitutional mandate of "promptness." I am unpersuaded *McLaughlin, supra,* 500 U.S. 44, is dispositive or controlling here. Factually, that case involved only adults. In assessing the protections afforded minors, the United States Supreme Court has consciously "refrained . . . from taking the easy way with a flat holding that all rights constitutionally assured for the adult accused are to be imposed on the state juvenile proceeding." (*McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528, 545 [29 L.Ed.2d 647, 661, 91 S.Ct. 1976]; *id.,* at p. 541 [29 L.Ed.2d at pp. 658-659].) Thus, I do not construe the holding in *McLaughlin* to extend perforce to juveniles simply because it does not expressly restrict its scope to adults. In my view, the issue warrants an independent examination, bearing in mind both the general nature of the Fourth Amendment guaranty with its rubric of reasonableness and the particularized concerns of the juvenile justice system. (403 U.S. at p. 545 [29 L.Ed.2d at p. 661]; cf. *New Jersey* v. *T.L.O., supra,* 469 U.S. at pp. 337-343 [83 L.Ed.2d at pp. 731-736].)

Since any official detention can adversely affect a minor as critically and undeniably as it does an adult, juveniles do have a protectible liberty interest

---

[1]Indeed, as the lead opinion notes (*ante,* p. 1217), the original habeas corpus petition challenged the "official position" of the Los Angeles County Superior Court, based on an opinion of county counsel, that juveniles are not entitled to a prompt probable cause determination under *McLaughlin, supra,* 500 U.S. 44. For this reason, I agree with Justice Mosk and Justice George that the lead opinion is nonresponsive and therefore unpersuasive to the extent the analysis relies on *Schall* v. *Martin* (1984) 467 U.S. 253 [81 L.Ed.2d 207, 104 S.Ct. 2403], a case decided on Fourteenth Amendment due process grounds, and *Reno* v. *Flores* (1993) 507 U.S. __ [123 L.Ed.2d 1, 113 S.Ct. 1439], a Fifth Amendment due process decision.

with respect to such restraint, even though they are generally subject to greater restriction of their freedom by virtue of their minority. (*Schall* v. *Martin*, *supra*, 467 U.S. at p. 265 [81 L.Ed.2d at pp. 217-218].) Moreover, while juveniles do not ipso facto possess the same constitutional rights as adults (see, e.g., *New Jersey* v. *T.L.O.*, *supra*, 469 U.S. at p. 342, fn. 8 [83 L.Ed.2d at p. 735]), it is now a settled proposition that the "promptness" requirement of *Gerstein* v. *Pugh*, *supra*, 420 U.S. at pages 111-116 [43 L.Ed.2d at pages 63-67], embraces all warrantless detentions regardless of the detainee's age. (See, e.g., *R.W.T.* v. *Dalton* (8th Cir. 1983) 712 F.2d 1225, 1230; *Moss* v. *Weaver* (5th Cir. 1976) 525 F.2d 1258, 1259-1260.) The question remains, however, to quantify the mandate of *Gerstein* for juveniles as the United States Supreme Court has done for adults in *McLaughlin*, *supra*, 500 U.S. at page 56 [114 L.Ed.2d at page 63, 111 S.Ct. at page 1670]. Although we lack a direct answer, decisions of the high court provide some useful contours to the analytical framework.

In general, the juvenile context is highly relevant in determining whether and to what extent a particular constitutional principle applies to minors. (See, e.g., *Schall* v. *Martin*, *supra*, 467 U.S. at p. 265 [81 L.Ed.2d at pp. 217-218].) Depending upon the interest at stake, this circumstance may dictate that juveniles have rights coextensive with adults, may debar them entirely, or may necessitate some modification of rights. (See *McKeiver* v. *Pennsylvania*, *supra*, 403 U.S. at pp. 533-534 [29 L.Ed.2d at pp. 653-654].)

For example, in *McKeiver* v. *Pennsylvania*, *supra*, 403 U.S. 528, the Supreme Court declined to extend the right of jury trial to juvenile adjudications. (*Id.*, at p. 545 [29 L.Ed.2d at p. 661].) In the court's view, superimposing this requirement on such proceedings would not appreciably enhance the fact-finding process, while at the same time it would impair the laudatory, if not always successful, goals of the system. (*Id.*, at pp. 547-550 [29 L.Ed.2d at pp. 662-664].) On the other hand, the court has ruled that minors are entitled to proof beyond a reasonable doubt (*In re Winship* (1970) 397 U.S. 358, 368 [25 L.Ed.2d 368, 377-378, 90 S.Ct. 1068]) and the defense of double jeopardy (*Breed* v. *Jones* (1975) 421 U.S. 519, 531 [44 L.Ed.2d 346, 356, 95 S.Ct. 1779]) to the same extent these guaranties protect adults because "there is little to distinguish" between adjudications and criminal trials relative to the underlying constitutional principles. (*Id.*, at p. 530 [44 L.Ed.2d at p. 356].) In each instance, the minimal infringement on the traditional informality of juvenile proceedings did not outweigh the substantial concerns of the minor in the fair determination of delinquency and a limitation on multiple hearings. (*Id.*, at pp. 536-539 [44 L.Ed.2d at pp. 359-361]; *In re Winship*, *supra*, 397 U.S. at pp. 366-368 [25 L.Ed.2d at pp. 376-378].)

In other cases, the Supreme Court has sought to harmonize the protectible interests of minors with their correlative constitutional underpinnings. In the seminal case of *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], it determined that a juvenile's right to due process when taken into custody for suspected criminal activity included, inter alia, the privilege against self-incrimination. (*Id.*, at p. 55 [18 L.Ed.2d at p. 561].) At the same time, the court acknowledged "that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique—but not in principle—depending upon the age of the child and the presence and competence of parents." (*Ibid.*; see also *id.*, at pp. 33-34 [18 L.Ed.2d at pp. 549-550] [due process requires notice of charges to juvenile's parents as well as juvenile]; *Haley* v. *Ohio* (1948) 332 U.S. 596, 599-601 [92 L.Ed. 224, 228-229, 68 S.Ct. 302] [admissions and confessions of juveniles require special caution].)

In *New Jersey* v. *T.L.O.*, *supra*, 469 U.S. 325, the court considered "what limits, if any, the Fourth Amendment places on the activities of school authorities" who search students. (469 U.S. at p. 332 [83 L.Ed.2d at p. 735].) Although schoolchildren have an expectation of privacy (*id.*, at pp. 337-339 [83 L.Ed.2d at pp. 731-733]), the need to maintain order in the classroom "requires some easing of the restrictions to which searches by public authorities are ordinarily subject." (*Id.*, at p. 340 [83 L.Ed.2d at p. 733].) Thus, in striking the balance of reasonableness, considerations unique to their particular circumstance qualified the scope of constitutional protection available to juveniles.

Regardless of its ultimate conclusion in these cases, the Supreme Court has continually emphasized in its analyses the need to maintain a measure of flexibility to accommodate the special attention with which our society still endeavors to treat youthful offenders. (See, e.g., *New Jersey* v. *T.L.O.*, *supra*, 469 U.S. at p. 340 [83 L.Ed.2d at p. 733]; *Breed* v. *Jones*, *supra*, 421 U.S. at p. 540 [44 L.Ed.2d at pp. 361-362]; *McKeiver* v. *Pennsylvania*, *supra*, 403 U.S. at p. 547 [29 L.Ed.2d at p. 662].) I believe this concern to maximize individualized response is particularly relevant to the question of probable cause determinations because the detention of juveniles implicates additional considerations related to their minority. (See lead opn., *ante*, pp. 1219-1222.) It also segues with the explicit premise of the Fourth Amendment, which proscribes only "unreasonable" seizures. (Cf. *New Jersey* v. *T.L.O.*, *supra*, 469 U.S. at pp. 340-341 [83 L.Ed.2d at pp. 733-734].)

These collateral matters do not necessarily preclude probable cause determinations within a shorter period; indeed, as both Justice Mosk and Justice George argue in their dissents, every effort should be made to minimize the

period of detention at this juncture in the adjudicatory process. Nevertheless, they provide a rational basis on which to premise some latitude beyond the 48-hour limit delineated in *McLaughlin*. (Cf. *Schall* v. *Martin, supra*, 467 U.S. at pp. 265-266 [81 L.Ed.2d at pp. 217-218].) Moreover, even with respect to adult detentions, the Supreme Court has reiterated that "probable cause determinations must be prompt—not immediate" to maintain a necessary measure of " 'flexibility' and 'experimentation' " within each state's criminal justice system. (*McLaughlin, supra*, 500 U.S. at p. 54 [114 L.Ed.2d at pp. 61-62, 111 S.Ct. at p. 1669]; see *Gerstein* v. *Pugh, supra*, 420 U.S. at p. 123 [420 L.Ed.2d at pp. 71-72].) These latter considerations are all the more significant in the juvenile justice system, which seeks to provide intervention and rehabilitation, not simply punishment. (See, e.g., Welf. & Inst. Code, §§ 626, 626.5, 628, 628.1.)

I therefore conclude that under the Fourth Amendment the circumstances of a juvenile differ sufficiently from those of an adult that the "promptness" requirement of *Gerstein* v. *Pugh, supra*, 420 U.S. 103, is satisfied if a juvenile detainee is provided a probable cause determination within 72 hours following a warrantless arrest with no extension of time for nonjudicial days. (Cf. *McLaughlin, supra*, 500 U.S. at p. 58 [114 L.Ed.2d at p. 64, 111 S.Ct. at p. 1671] ["Under *Gerstein*, jurisdictions may choose to combine probable cause determinations with other pretrial proceedings, so long as they do so promptly."].)

**MOSK, J.**—I dissent.

The Fourth Amendment to the United States Constitution—one of the core provisions of the Bill of Rights—declares: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[1]

In *Gerstein* v. *Pugh* (1975) 420 U.S. 103, 111-116, 123-125 [43 L.Ed.2d 54, 63-67, 70-72, 95 S.Ct. 854] (hereafter sometimes *Gerstein*), the United States Supreme Court held that the Fourth Amendment mandates, as a prerequisite to extended restraint of liberty, a prompt judicial determination that there is probable cause to believe that a person has in fact committed a criminal offense following a warrantless arrest based on suspicion thereof.

[1]The Fourth Amendment, of course, is applicable to the states through the due process clause of the Fourteenth Amendment. (*Wolf* v. *Colorado* (1949) 338 U.S. 25, 27-28 [93 L.Ed. 1782, 1785-1786, 69 S.Ct. 1359], overruled on another point, *Mapp* v. *Ohio* (1961) 367 U.S. 643, 643-660 [6 L.Ed.2d 1081, 1083-1093, 81 S.Ct. 1684, 84 A.L.R.2d 933].

In *County of Riverside* v. *McLaughlin* (1991) 500 U.S. 44, 56 [114 L.Ed.2d 49, 63-64, 111 S.Ct. 1661, 1670] (hereafter sometimes *McLaughlin*), the court defined "promptness" under *Gerstein* as generally within 48 hours of the warrantless arrest.

Thus, under the Fourth Amendment as construed by *Gerstein* and *McLaughlin*, a law-abiding person wrongfully arrested without a warrant is guaranteed his freedom within about 48 hours.

Today, a majority of this court refuse to honor that guaranty when the person in question happens to be a juvenile.

I cannot join in such a breach of our constitutional obligation.

I

On July 25, 1991, petitioner Alfredo A. submitted a petition for writ of habeas corpus to the Court of Appeal for the Second Appellate District. His allegations were to the following effect.

On July 24, 1991, petitioner, who was then 16 years of age, was arrested in Los Angeles without a warrant for possession of cocaine base for sale. (Health & Saf. Code, § 11351.5.) He was placed in the custody of the probation department in juvenile hall. He was, or would soon be, restrained of his liberty in violation of the Fourth Amendment without a prompt judicial probable cause determination within 48 hours of his warrantless arrest, as required by *Gerstein* and *McLaughlin*. As a general matter, the juvenile court law (Welf. & Inst. Code, § 200 et seq.) does not mandate such a determination for a juvenile. It does, however, specify a formal, adversarial probable cause or "detention" hearing as many as seven days after a juvenile's warrantless arrest. (*Id.*, § 632 et seq.) The superior court sitting as the juvenile court had earlier adopted as its "official position"—in accordance with a requested opinion by the county counsel based on *Schall* v. *Martin* (1984) 467 U.S. 253 [81 L.Ed.2d 207, 104 S.Ct. 2403] (hereafter sometimes *Schall*)—that *Gerstein*'s promptness requirement, at least as defined by *McLaughlin*, is not applicable to juveniles.

Through these allegations, petitioner effectively made a "systemic" Fourth Amendment challenge to the superior court's "official position." In his prayer for relief, he sought immediate release from custody or an immediate judicial probable cause determination.

On July 26, 1991, Division Three of the Court of Appeal for the Second Appellate District caused its clerk to issue an order (1) deeming petitioner's

submission to be a petition for writ of mandate against the superior court and (2) directing that court to show cause why a peremptory writ of mandate should not issue compelling it to comply with *Gerstein*'s promptness requirement, as defined by *McLaughlin*, with regard to juveniles as well as adults. The superior court subsequently filed opposition as respondent.

Also on July 26, 1991, the People submitted a petition to the juvenile court to declare petitioner a ward of the court. (Welf. & Inst. Code, § 602.) They alleged that he came within its jurisdiction on the ground that on July 24, 1991, he was in possession of cocaine (Health & Saf. Code, § 11351) and cocaine base (*id.*, § 11351.5) for sale.

On July 29, 1991, petitioner was brought to the juvenile court and released from custody, apparently because the probation department had not submitted a detention report. He waived time for arraignment. The matter was then continued to August 19, 1991. Further proceedings, if any, are not reflected in the record.

On December 5, 1991, rejecting petitioner's systemic Fourth Amendment challenge to the superior court's "official position," the Court of Appeal denied his petition. At the outset, it determined that the issue presented, even though moot as to petitioner because of his release from custody, remained suitable for resolution because, in words it quoted from *Gerstein*, the underlying question was " 'capable of repetition, yet evading review.' " (*Gerstein v. Pugh*, *supra*, 420 U.S. at p. 110, fn. 11 [43 L.Ed.2d at p. 63].) It then set out to answer the question posed, viz., whether the superior court's "official position" is contrary to the Fourth Amendment as construed by *Gerstein* and *McLaughlin*, by addressing a question *not* posed, viz., whether the juvenile court law is compatible with "fundamental fairness" under the Fourteenth Amendment's due process clause as interpreted in *Schall*. It purported to hold that the superior court's "official position" did not offend the Fourth Amendment.

On January 8, 1992, petitioner filed a petition for review. On February 20, 1992, we granted his request in order to determine whether *Gerstein*'s promptness requirement is applicable to juveniles and, if so, whether *McLaughlin*'s definition of "promptness" operates in this setting. On May 4, 1993, we handed down our original "decision," which comprised four opinions, none commanding more than three votes. On July 15, 1993, we ordered rehearing on our own motion.

## II

Before the issue on which this court granted review may properly be resolved, its suitability of resolution must be addressed. Little discussion is

called for. In fact, the words the Court of Appeal quoted from *Gerstein* are sufficient: the point is " 'capable of repetition, yet evading review.' " (*Gerstein* v. *Pugh*, *supra*, 420 U.S. at p. 110, fn. 11 [43 L.Ed.2d at p. 63].) As the *Gerstein* court explained: "Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures." (*Ibid.*)

### III

The question before the court is bipartite. Is *Gerstein*'s promptness requirement applicable to juveniles? If so, does *McLaughlin*'s definition of "promptness" operate in this setting?

### A

In *Gerstein*, the United States Supreme Court held that the Fourth Amendment mandates a prompt judicial probable cause determination as a prerequisite to extended restraint of liberty following a warrantless arrest. (*Gerstein* v. *Pugh*, *supra*, 420 U.S. at pp. 111-116, 123-125 [43 L.Ed.2d at pp. 63-67, 70-72].)

In reaching this conclusion, the *Gerstein* court sought to reconcile or at least accommodate an individual's Fourth Amendment rights and the state's legitimate interest in law enforcement. (*Gerstein* v. *Pugh*, *supra*, 420 U.S. at pp. 111-113 [43 L.Ed.2d at pp. 63-65].)

Under what the *Gerstein* court called its "practical compromise," "a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. [Citations.] Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of

liberty. [Citation.] When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty." (*Gerstein* v. *Pugh, supra*, 420 U.S. at pp. 113-114 [43 L.Ed.2d at pp. 64-65].)

Thus, the *Gerstein* court made plain that the prompt judicial probable cause determination mandated by the Fourth Amendment must be "prompt" in terms of the time that is required for the state "to take the administrative steps incident to arrest" (*Gerstein* v. *Pugh, supra*, 420 U.S. at p. 114 [43 L.Ed.2d at p. 64]), such as booking, photographing, and fingerprinting (*County of Riverside* v. *McLaughlin, supra*, 500 U.S. at p. 59 [114 L.Ed.2d at p. 64, 111 S.Ct. at p. 1671]).

The *Gerstein* court also made plain that this prompt judicial probable cause determination does not require the "full panoply of adversary safeguards" of "counsel, confrontation, cross-examination, and compulsory process . . . ." (*Gerstein* v. *Pugh, supra*, 420 U.S. at p. 119 [43 L.Ed.2d at p. 68].) Rather, "a nonadversary proceeding [based] on hearsay and written testimony" is sufficient. (*Id.* at p. 120 [43 L.Ed.2d at p. 69].) "The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing. The standard is the same as that for arrest. That standard—probable cause to believe the suspect has committed a crime—traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony . . . ." (*Ibid.*, fn. omitted.) The court noted: "Because the standards [for arrest and detention] are identical, ordinarily there is no need for further investigation before the probable cause determination can be made." (*Id.* at p. 120, fn. 21 [43 L.Ed.2d at p. 64].)

The *Gerstein* court "recognize[d] that state systems of criminal procedure vary widely. There is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole." (*Gerstein* v. *Pugh, supra*, 420 U.S. at p. 123 [43 L.Ed.2d at p. 71].) It also "recognize[d] the desirability of flexibility and experimentation by the States. It may be found desirable, for example, to make the probable cause determination at the suspect's first appearance before a judicial officer, [citation], or the determination may be incorporated into the procedure for setting bail or fixing other conditions of pretrial release. In some States, existing procedures may satisfy the requirement of the Fourth Amendment. Others may require only minor adjustment . . . ." (*Id.* at pp. 123-124 [43 L.Ed.2d at p. 71], fn. omitted.) But it declared: "Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant

pretrial restraint of liberty, and this determination must be made by a judicial officer . . . promptly after arrest" when the arrest itself is made without a warrant. (*Id.* at pp. 124-125 [43 L.Ed.2d at pp. 71-72], fn. omitted.)

## B

In *McLaughlin*, the United States Supreme Court undertook to define "promptness" under *Gerstein*. (*County of Riverside* v. *McLaughlin, supra*, 500 U.S. at p. 47 [114 L.Ed.2d at p. 57, 111 S.Ct. at p. 1665].) The facts there are similar to those here. At issue was Riverside County's policy of combining judicial probable cause determinations with its arraignment procedures, which resulted in a delay of as many as seven days after a person's warrantless arrest. The Courts of Appeals were in conflict as to the meaning of "promptness." The Fourth, Seventh, and Ninth Circuits declared or suggested that a judicial probable cause determination is "prompt" only if it is provided *immediately* after the state has "take[n] the administrative steps incident to arrest" (*Gerstein* v. *Pugh, supra*, 420 U.S. at p. 114 [43 L.Ed.2d at p. 65]); see also *Fisher* v. *Washington Metro. Area Transit Authority* (4th Cir. 1982) 690 F.2d 1133, 1139-1140; *Llaguno* v. *Mingey* (7th Cir. 1985) 763 F.2d 1560, 1567-1568 (*in bank*); *McLaughlin* v. *County of Riverside* (9th Cir. 1989) 888 F.2d 1276, 1278, vacated *sub nom. County of Riverside* v. *McLaughlin, supra*, 500 U.S. 44.) The Second Circuit held against the requirement of "immediacy." (See *Williams* v. *Ward* (2d Cir. 1988) 845 F.2d 374, 385-386.)

The *McLaughlin* court adhered to, and indeed reaffirmed, the holding of *Gerstein* that the Fourth Amendment mandates a prompt judicial probable cause determination as a prerequisite to extended restraint of liberty following a warrantless arrest. (*County of Riverside* v. *McLaughlin, supra*, 500 U.S. at pp. 50-56 [114 L.Ed.2d at pp. 59-62, 111 S.Ct. at pp. 1667-1669].)

The *McLaughlin* court also remained faithful to *Gerstein*'s view that "promptness" must be measured in terms of the time that is required for the state "to take the administrative steps incident to arrest" (*Gerstein* v. *Pugh, supra*, 420 U.S. at p. 114 [43 L.Ed.2d at p. 65]). (See *County of Riverside* v. *McLaughlin, supra*, 500 U.S. at p. 59 [114 L.Ed.2d at p. 64, 111 S.Ct. at p. 1671].) In its own words: "Under *Gerstein*, jurisdictions may choose to combine probable cause determinations with other pretrial proceedings, so long as they do so promptly. This necessarily means that only certain proceedings are candidates for combination. Only those proceedings that arise very early in the pretrial process—such as bail hearings and arraignments—may be chosen." (*Id.* at p. 58 [114 L.Ed.2d at p. 64, 111 S.Ct. at p. 1671].) The reason is plain. To allow "promptness" to be defined with

reference to other "steps" that a state might desire to "take" beyond those "incident to arrest"—for example, the holding of a preliminary examination —would render the requirement nugatory. A federal constitutional mandate that is designed to constrain the states cannot be dependent on the individual policy choices that any given state might happen to make.

All the same, the *McLaughlin* court recognized that the bare mandate of a "prompt" judicial probable cause determination had proved inadequate. It stated: "Unfortunately, as lower court decisions applying *Gerstein* have demonstrated, it is not enough to say that probable cause determinations must be 'prompt.' This vague standard simply has not provided sufficient guidance. Instead, it has led to a flurry of systemic challenges to city and county practices, putting federal judges in the role of making legislative judgments and overseeing local jailhouse operations." (*County of Riverside* v. *McLaughlin, supra*, 500 U.S. at pp. 55-56 [114 L.Ed.2d at p. 62, 111 S.Ct. at p. 1669].)

The *McLaughlin* court declined to hold that a judicial probable cause determination is "prompt" only if it is provided *immediately* after the state has "take[n] the administrative steps incident to arrest" (*Gerstein* v. *Pugh, supra*, 420 U.S. at p. 114 [43 L.Ed.2d at p. 65]). It stated: "Taking into account the competing interests articulated in *Gerstein*, we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*. For this reason, such jurisdictions will be immune from systemic challenges." (*County of Riverside* v. *McLaughlin, supra*, 500 U.S. at p. 56 [114 L.Ed.2d at p. 63, 111 S.Ct. at p. 1670].)

The *McLaughlin* court then added: "This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing[2] may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably." (*County of Riverside* v. *McLaughlin, supra*, 500 U.S. at p. 56 [114 L.Ed.2d at p. 63, 111 S.Ct. at p. 1670].) But "[w]here an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the

---

[2]At this and a few other places in *McLaughlin*, the court referred to a "probable cause hearing" as the subject of *Gerstein*. "But this unfortunate phrase (used much less often than the more accurate term, 'probable cause determination') should not be taken to suggest an adversary hearing is required." (2 LaFave, Search and Seizure (2d ed. 1994 pocket supp.) § 5.1, p. 123, fn. 198.4.)

existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest." (*Id.* at p. 57 [114 L.Ed.2d at p. 63, 111 S.Ct. at p. 1670].)

It must be noted that *McLaughlin* was not a unanimous decision. In a dissenting opinion in which Justice Blackmun and Justice Stevens joined, Justice Marshall would have defined "promptness" under *Gerstein* to incorporate the "immediacy" requirement, i.e., a judicial probable cause determination is "prompt" only if it is provided *immediately* after the state has "take[n] the administrative steps incident to arrest" (*Gerstein* v. *Pugh, supra,* 420 U.S. at p. 114 [43 L.Ed.2d at p. 65]. (*County of Riverside* v. *McLaughlin, supra,* 500 U.S. at p. 59 [114 L.Ed.2d at p. 64, 111 S.Ct. at p. 1671] (dis. opn. of Marshall, J.).) In a separate dissenting opinion, Justice Scalia would have adopted a similar definition. (*Id.* at pp. 59-68 [114 L.Ed.2d at pp. 65-70, 111 S.Ct. at pp. 1672-1675] (dis. opn. of Scalia, J.).) He would also have rejected the court's "outer time limit" of 48 hours in favor of a line drawn at "certainly no more than 24 hours." (*Id.* at pp. 67-68 [114 L.Ed.2d at p. 70, 111 S.Ct. at p. 1676] (dis. opn. of Scalia, J.).)[3]

## IV

As stated above, the question before this court is whether *Gerstein*'s promptness requirement is applicable to juveniles and, if so, whether *McLaughlin*'s definition of "promptness" operates in this setting.

### A

The first issue is the applicability of *Gerstein*'s promptness requirement to juveniles.

*Gerstein* declares, both expressly and impliedly, from beginning to end, that the Fourth Amendment's protection extends to "persons" or "individuals." It does not purport to limit the constitutional guaranty to adults or even to qualify its benefit to juveniles.

---

[3]In *Jenkins* v. *Chief Justice of Dist. Court* (1993) 416 Mass. 221, 232, 238 [619 N.E.2d 324, 332, 335], the Supreme Judicial Court of Massachusetts recently held, in the course of a scholarly and unanimous opinion, that article 14 of the Massachusetts Declaration of Rights, the state constitutional counterpart to the later-adopted Fourth Amendment, "embodies the common law guarantee that a warrantless arrest must be followed by a judicial determination of probable cause no later than reasonably necessary to process the arrest and to reach a magistrate," and that, "in the usual circumstance, no more than a twenty-four hour time period is needed to reach the magistrate."

I find no reason within *Gerstein*'s four corners to cabin its conclusion. The *Gerstein* court did not itself choose to restrict the scope of the requirement that it established. I decline to do what it did not.

Neither do I discern outside *Gerstein* any ground to delimit its holding.

It was firmly established almost a decade before *Gerstein* was handed down that "the Bill of Rights is [not] for adults alone." (*In re Gault* (1967) 387 U.S. 1, 13 [18 L.Ed.2d 527, 538, 87 S.Ct. 1428].)

Indeed, this court itself has expressly held that among the rights of the United States Constitution to which juveniles are entitled "is the guarantee of freedom from unreasonable searches and seizures contained in the Fourth Amendment . . . ." (*In re William G.* (1985) 40 Cal.3d 550, 557 [221 Cal.Rptr. 118, 709 P.2d 1287]; accord, e.g., *People v. Chard* (Colo. 1991) 808 P.2d 351, 353 [holding that the "constitutional guarantees" to which juveniles are entitled include "protection from unreasonable searches and seizures under the fourth amendment"]; *In re Fingerprinting of Juvenile* (1989) 42 Ohio St.3d 124, 126 [537 N.E.2d 1286, 1287] [stating that "it is well-settled that a juvenile is as entitled as an adult to the constitutional protections of the Fourth Amendment"]; *Roberts v. Mills* (1981) 290 Ore. 441, 444 [622 P.2d 1094, 1097] [holding in substance that the Fourth Amendment covers juveniles as well as adults].)

To be sure, the particular commands and prohibitions of the Fourth Amendment may vary in some respects for adults and juveniles. The basic criterion of the constitutional provision is, of course, "reasonableness." (E.g., *Florida v. Jimeno* (1991) 500 U.S. 248, 250 [114 L.Ed.2d 297, 302, 111 S.Ct. 1801, 1803] ["The touchstone of the Fourth Amendment is reasonableness."].)

Whatever differentiation may be justified in some areas for adults and juveniles under the Fourth Amendment is not justified here. In *McLaughlin*, the court predicated *Gerstein*'s promptness requirement on the proposition that "[a] State has no legitimate interest in detaining for extended periods individuals who have been arrested without probable cause." (*County of Riverside v. McLaughlin, supra*, 500 U.S. at p. 55 [114 L.Ed.2d at p. 62, 111 S.Ct. at p. 1669].) This applies to *all* individuals—whether or not they have attained the age of majority. When probable cause is lacking, detention is unsupported as a matter of law. That proposition does not depend on how old the detainee is. The presence of youth does not make up for the absence of probable cause.

I recognize that the state, as *parens patriae*, may have a legitimate interest in detaining a juvenile for criminal activity prior to trial. That interest,

however, is not served by holding *Gerstein*'s promptness requirement inapplicable. Without question, an adult arrested without probable cause must be released as soon as reasonably possible. The reason: grounds for detention are lacking. So too, a juvenile arrested without probable cause must be released as soon as reasonably possible. The reason is the same. Absent probable cause, the state's exercise of its power to preserve and promote the welfare of the child is without support. For juveniles as for adults, *Gerstein*'s promptness requirement operates to conserve and allocate resources by limiting the class of detainees to those who are properly subject to detention. Of course, the state, as *parens patriae*, may have a legitimate interest in detaining a juvenile for reasons *unrelated to criminal activity*. But no such interest is implicated here.

I also recognize that, in detaining a juvenile for criminal activity prior to trial, the state may use means and/or facilities different from those it uses for adults. That fact, however, is not determinative. It simply cannot be said that the restraint of liberty imposed on a juvenile is somehow less significant, in and of itself, than that imposed on an adult. Indeed, "[p]retrial detention is an onerous experience, *especially for juveniles . . . .*" (*Moss* v. *Weaver* (5th Cir. 1976) 525 F.2d 1258, 1260, italics added; see *In re William M.* (1970) 3 Cal.3d 16, 30-31 [89 Cal.Rptr. 33, 473 P.2d 737] [to similar effect].)

Moreover, it appears that since *Gerstein* was decided, all reported decisions that have considered the question to resolution have held or stated, expressly or impliedly, that *Gerstein* is applicable to *all* "persons" or "individuals," juveniles as well as adults. (See, e.g., *R.W.T.* v. *Dalton* (8th Cir. 1983) 712 F.2d 1225, 1230 [holding that under *Gerstein*, "juveniles who are detained because they are suspected of committing criminal acts must be afforded a prompt probable-cause hearing"—thereby deciding a question left open in *United States* v. *Allen* (8th Cir. 1978) 574 F.2d 435, 439 & fn. 11]; *Moss* v. *Weaver, supra*, 525 F.2d at pp. 1259-1260 [holding that *Gerstein*'s promptness requirement is applicable to juveniles]; *JV-114246* v. *Superior Court* (Ct.App. 1988) 159 Ariz. 357, 358 [767 P. 2d 705] [same], following *Bell* v. *Superior Court in & for Cty. of Pima* (1977) 117 Ariz. 551, 553-554 [574 P. 2d 39] [same]; *J.T.* v. *O'Rourke in and for the Tenth Jud. Dist.* (Colo. 1982) 651 P.2d 407, 409 [holding that under *Gerstein*, "a juvenile who is detained is entitled to a preliminary [probable cause] hearing by constitutional mandate"]; *Roberts* v. *Mills, supra*, 290 Ore. at p. 444 [622 P.2d at p. 1097] [holding in substance that *Gerstein*'s promptness requirement is applicable to juveniles].)

Therefore, I conclude that *Gerstein*'s promptness requirement is indeed applicable to juveniles.

B

The second issue is whether *McLaughlin*'s definition of "promptness" operates in the juvenile setting.

*McLaughlin* declares, both expressly and impliedly, from beginning to end, that its definition of "promptness" extends to "probable cause determinations" generally. It does not purport to limit its scope to adults or even to qualify its meaning for juveniles.

I do not see in *McLaughlin* itself any basis to restrict its definition of "promptness" against juveniles. Quite the contrary. The reasoning of the *McLaughlin* court is premised on an assessment that the "undefined" promptness requirement of *Gerstein* is simply too "vague" a "standard." (*County of Riverside* v. *McLaughlin*, *supra*, 500 U.S. at pp. 55-56 [114 L.Ed.2d at pp. 61-62, 111 S.Ct. at p. 1669].) That assessment holds as true for juvenile proceedings relating to minors as for criminal actions involving adults. Perhaps truer. For if "it is not enough to say that probable cause determinations must be 'prompt'" for criminal actions (*id.* at pp. 55-56 [114 L.Ed.2d at p. 62, 111 S.Ct. at p. 1669]), which are governed by a procedural law that is relatively well defined, a fortiori it is not nearly enough for juvenile proceedings, which are guided by norms of another sort. Similarly, if the "undefined" promptness requirement has already "led to a flurry of systemic challenges to city and county practices [in criminal actions], putting federal judges in the role of making legislative judgments and overseeing local jailhouse operations" (*id.* at p. 56 [114 L.Ed.2d at p. 62, 111 S.Ct. at p. 1669]), it will surely lead to like challenges in juvenile proceedings—of which the present is, apparently, only the first—involving the state judiciary as well as the federal in matters that belong largely to the other branches of government.

Neither do I discover any support outside *McLaughlin* to condition its definition of "promptness" against juveniles. As stated, juveniles as well as adults are entitled to the protections of the Fourth Amendment. As also stated, the basic criterion of the constitutional provision is "reasonableness." The definition articulated by the *McLaughlin* court serves to give content to this test. No reason appears to deny its benefit to juveniles. Unquestionably, "it is not enough to say that probable cause determinations must be 'prompt'" (*County of Riverside* v. *McLaughlin*, *supra*, 500 U.S. at pp. 55-56 [114 L.Ed.2d at p. 62, 111 S.Ct. at p. 1669]) when the state acts as enforcer of the criminal law for the sake of the community generally. The same is true when the state acts as *parens patriae* for the benefit of the child. The word "prompt" is no less "vague" in the latter situation than in the former. As noted, under the Fourth Amendment as construed by *Gerstein* and *McLaughlin*, a law-abiding person wrongfully arrested without a warrant is guaranteed

his freedom within about 48 hours. It would be unreasonable to hold that when the person in question happens to be a juvenile, the guaranty is illusory.

Therefore, I conclude that *McLaughlin*'s definition of "promptness" does in fact operate in the juvenile setting.

## C

In conducting my analysis, I have not overlooked *Schall* v. *Martin*, *supra*, 467 U.S. 253, which was decided nine years after *Gerstein* and seven years before *McLaughlin*.

In *Schall*, the United States Supreme Court held that a section of the New York Family Court Act was not invalid under the due process clause of the Fourteenth Amendment. (*Schall* v. *Martin*, *supra*, 467 U.S. at pp. 256-257, 263-281 [81 L.Ed.2d at pp. 211-212, 217-228].) The provision in question authorized court-ordered "preventive detention" of a juvenile accused of delinquency, i.e., pretrial detention based on a judicial finding that there is a "serious risk" that the juvenile " 'may before the return date commit an act which if committed by an adult would constitute a crime.' " (*Id.* at p. 255 [81 L.Ed.2d at p. 211].) The court expressly noted that the propriety of detention *based on a warrantless arrest* was "not at issue": the sole question concerned "*judicially ordered* detention." (*Id.* at p. 258, fn. 5 [81 L.Ed.2d at p. 213], italics added.)

In scrutinizing the New York statutory scheme, the *Schall* court asked whether the authorization of court-ordered preventive detention was compatible with "fundamental fairness" under the Fourteenth Amendment's due process clause. (*Schall* v. *Martin*, *supra*, 467 U.S. at p. 263 [81 L.Ed.2d at p. 216].) It identified two subsidiary inquiries. First, did court-ordered preventive detention under the statutory provision serve a legitimate state objective? (*Id.* at pp. 263-264 [81 L.Ed.2d at pp. 216-217].) Second, were the procedural safeguards contained therein adequate against erroneous and unnecessary restraints of liberty? (*Id.* at p. 264 [81 L.Ed.2d at p. 217].)

At the outset, the *Schall* court observed: "There is no doubt that the Due Process Clause is applicable in juvenile proceedings. 'The problem . . . is to ascertain the precise impact of the due process requirement upon such proceedings.' " (*Schall* v. *Martin*, *supra*, 467 U.S. at p. 263 [81 L.Ed.2d at p. 216].) It went on: "[C]ertain basic constitutional protections enjoyed by adults accused of crimes also apply to juveniles. [Citations.] But the Constitution does not mandate elimination of all differences in the treatment of

juveniles. [Citation.] The State has 'a *parens patriae* interest in preserving and promoting the welfare of the child,' [citation], which makes a juvenile proceeding fundamentally different from an adult criminal trial." (*Ibid.*) In view thereof, it had "tried . . . to strike a balance—to respect the 'informality' and 'flexibility' that characterize juvenile proceedings, [citation], and yet to ensure that such proceedings comport with the 'fundamental fairness' demanded by the Due Process Clause." (*Ibid.*)

The *Schall* court concluded that the New York statutory scheme with its authorization of court-ordered preventive detention was indeed compatible with "fundamental fairness" under the Fourteenth Amendment's due process clause. It did so because it answered each of the two subsidiary inquiries in the affirmative.

First, the *Schall* court held that court-ordered preventive detention under the New York statutory scheme served the legitimate state objective of protecting both society and the juvenile from the hazards of pretrial crime. (*Schall* v. *Martin, supra,* 467 U.S. at pp. 264-274 [81 L.Ed.2d at pp. 217-223].) On this point, it explained that in aiming at such protection, the state undertook to act as enforcer of the criminal law for the sake of the community generally and also as *parens patriae* for the benefit of the child. (*Id.* at pp. 264-266 [81 L.Ed.2d at pp. 217-218].)

Second, the *Schall* court held that the procedural safeguards contained in the New York statutory scheme were adequate against erroneous and unnecessary restraints of liberty. (*Schall* v. *Martin, supra,* 467 U.S. at pp. 274-281 [81 L.Ed.2d at pp. 223-228].) In this regard, it observed that under both the Fourth Amendment as construed by *Gerstein* and the Fourteenth Amendment's due process clause as interpreted in various decisions involving juvenile proceedings, there was a common concern with "flexibility" and "informality." (*Id.* at p. 275 [81 L.Ed.2d at p. 224].) It indicated that *Gerstein* had found certain "flexible procedures," which included a formal, adversarial probable cause hearing within five days of a warrantless arrest, to be adequate for the Fourth Amendment. (*Id.* at p. 277 & fn. 28 [81 L.Ed.2d at p. 225].) It made clear that it found similar procedures under the New York statutory scheme, which included a formal, adversarial probable cause hearing within at most nine days of a warrantless arrest, to be sufficient for the Fourteenth Amendment's due process clause.

After even brief consideration, it becomes plain that *Schall* does not affect the conclusion that *Gerstein*'s promptness requirement is indeed applicable to juveniles and that *McLaughlin*'s definition of "promptness" does in fact operate in this setting.

"It is axiomatic," of course, "that cases are not authority for propositions not considered." (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580]; accord, *McDowell & Craig* v. *City of Santa Fe Springs* (1960) 54 Cal.2d 33, 38 [4 Cal.Rptr. 176, 351 P.2d 344].)

To begin with, *Schall* is based on the Fourteenth Amendment's due process clause. *Gerstein* and *McLaughlin*, by contrast, rest on the Fourth Amendment. Indeed, the *Schall* court effectively declared that its reach did not extend to the Fourth Amendment question presented here when it expressly noted that it was solely concerned with "*judicially ordered* detention." (*Schall* v. *Martin*, *supra*, 467 U.S. at p. 258, fn. 5 [81 L.Ed.2d at p. 213] italics added.) Moreover, the *Schall* court referred only to formal, adversarial probable cause hearings, and not to the informal, nonadversarial judicial probable cause determinations discussed in *Gerstein* and *McLaughlin*. Lastly, and perhaps most important, the *Schall* court dealt with a situation in which the juvenile was already detained pursuant to court order—unlike the situation here, where he was not.

To be sure, at one point in its opinion the *Schall* court stated: "In *Gerstein* . . . , we held that a judicial determination of probable cause is a prerequisite to any extended restraint on the liberty of an *adult* accused of crime." (*Schall* v. *Martin*, *supra*, 467 U.S. at pp. 274-275 [81 L.Ed.2d at p. 224], italics added to "adult.") And at another point: "In many respects, the [New York statutory scheme] provides far more predetention protection for juveniles than we found to be constitutionally required for a probable-cause determination for *adults* in *Gerstein*." (*Id.* at p. 275 [81 L.Ed.2d at p. 224], italics added to "adults.")

The *Schall* court's dicta, isolated and irrelevant as they are, cannot reasonably be read as an after-the-fact attempt to limit *Gerstein* to adults, but must be viewed merely as a reflection of the general factual context out of which *Gerstein* arose. Indeed, it appears that no reported decision—with the singular exception of the opinion of the Court of Appeal below—has construed these words to impose such a limitation. This is certainly true of *McLaughlin*. In that case, the court could easily have used this language, which was cited by the parties and amici curiae therein, to limit *Gerstein* to adults. Conspicuously, it did not do so.

It can perhaps be argued that there is tension between *Schall* and *McLaughlin*. The former implies that a formal, adversarial probable cause hearing within at most nine days of the warrantless arrest of a juvenile who is already in court-ordered preventive detention suffices for the Fourteenth Amendment's due process clause. By contrast, the latter holds that a judicial

probable cause determination, albeit informal and nonadversarial, is required by the Fourth Amendment generally within 48 hours of a warrantless arrest.

Any such tension, however, must necessarily be resolved in favor of the later-decided *McLaughlin* and against the earlier-decided *Schall*. By its terms, the *Schall* implication depends on *Gerstein*'s "undefined" promptness requirement and *Gerstein*'s consequent approval of a delay of five days between a warrantless arrest and a formal, adversarial probable cause hearing. The *McLaughlin* holding, however, expressly defines "promptness" as generally within 48 hours and thereby withdraws approval of a 5-day delay. Therefore, the *Schall* implication simply does not survive the *McLaughlin* holding.

In conducting my analysis, I have also not overlooked *Reno* v. *Flores* (1993) 507 U.S. __ [123 L.Ed.2d 1, 113 S.Ct. 1439] (hereafter *Flores*).

In *Flores*, the United States Supreme Court rejected a constitutional challenge, based solely on the due process clause of the Fifth Amendment, to an Immigration and Naturalization Service regulation governing the detention of allegedly deportable alien juveniles. It cited *Schall*. But it did not even allude to the Fourth Amendment, less still *Gerstein* or *McLaughlin*. That, of course, is not surprising. It appears that deportable aliens are not even within the protection of the Fourth Amendment. In *United States* v. *Verdugo-Urquidez* (1990) 494 U.S. 259, 265 [108 L.Ed.2d 222, 232-233, 110 S.Ct. 1056], the court stated, albeit only in dictum, that " 'the people' protected by the Fourth Amendment . . . refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community"— among whom deportable aliens do not seem to number.

Since a case, like *Schall*, is not authority for a proposition it *did not* consider, a fortiori, a case, like *Flores*, cannot be authority for a proposition it *could not have* considered.

## V

Like the Court of Appeal below, the lead opinion sets out to answer the question posed—viz., whether the superior court's "official position" that *Gerstein*'s promptness requirement, at least as defined by *McLaughlin*, is not applicable to juveniles, is contrary to the Fourth Amendment as construed by those decisions—by addressing a question *not* posed—viz., whether the juvenile court law is compatible with "fundamental fairness" under the Fourteenth Amendment's due process clause as interpreted in *Schall*. The

fatal flaw of such analysis is evident: it is altogether nonresponsive. The lead opinion may just as well have attempted to determine whether the superior court's "official position" is contrary to the Fourth Amendment by considering whether the juvenile court law violates the Eighth Amendment's prohibition against cruel and unusual punishments.

Perhaps the lead opinion means to declare that whether and to what extent the Fourth Amendment is applicable to juveniles in the juvenile setting somehow implicates the due process clause of the Fourteenth Amendment. No reason or authority is presented in support of such a proposition. None is evident. The coverage of the Fourth Amendment, of course, is determined by the Fourth Amendment. True, the guaranty of due process protects those who have not attained the age of majority. But it protects as well those who have.

The lead opinion is much taken with *Schall.* Too much so.

The lead opinion implies that *Schall* is "authoritative" on the Fourth Amendment standards governing the detention of juveniles. But at most, it is such only as to *court-ordered* preventive detention. Detention of that sort, however, is *not* what is involved here. The lead opinion attempts to avoid the limited scope of *Schall.* But it trips on the opinion's very words: the propriety of detention *based on a warrantless arrest* was "not at issue"; the sole question concerned "*judicially ordered* detention." (*Schall* v. *Martin*, *supra*, 467 U.S. at p. 258, fn. 5 [81 L.Ed.2d at p. 213], italics added.)

The lead opinion also implies that *Schall* requires examination of "all the procedural components" of the juvenile court law because *Schall* itself examined "all the procedural components" of the New York Family Court Act. (Lead opn., *ante*, at p. 1226.) That is not so. *Schall's* consideration of the New York statute was dictated solely by the fact that, in that case, the statute had been challenged as invalid under the due process clause of the Fourteenth Amendment. The juvenile court law is not challenged here at all.

Lastly, the lead opinion assumes that the "authority" of *Schall* is unaffected by *McLaughlin.* But, as explained, in part relevant here the earlier-decided *Schall* does not even survive the later-decided *McLaughlin.*

The lead opinion then suggests that *Gerstein*'s promptness requirement, at least as defined by *McLaughlin*, is inapplicable to juveniles because in juvenile proceedings the state assertedly acts as *parens patriae* to preserve and promote the welfare of the child, whereas in criminal actions it acts as enforcer of the criminal law to mete out punishment.

Even if the lead opinion's premise is sound, its conclusion is simply incorrect. Whenever the state predicates detention on criminal activity—in whatever proceeding, under whatever role, or for whatever objective—probable cause is crucial for Fourth Amendment purposes. And whenever probable cause is crucial, *Gerstein*'s promptness requirement, as defined by *McLaughlin*, is applicable. A prompt judicial probable cause determination generally within 48 hours of a juvenile's warrantless arrest—a determination that may be informal and nonadversarial—is altogether consistent with the juvenile court law, the goals of which include the expeditious resolution of issues in a relatively open and cooperative setting.

I recognize that under the juvenile court law, the state may detain a juvenile for reasons *unrelated to criminal activity* —although only in a separate nonsecure facility segregated from those suspected of crime (Welf. & Inst. Code, § 206)—as when the minor appears in public suffering from a sickness or injury that requires care (*id.*, § 305, subd. (d)). In such a situation, *Gerstein* and *McLaughlin* are not implicated by their very terms. But such a situation does not obtain here.

In a word, when the state detains a person for criminal activity, it must establish probable cause. It is now settled that "[a] State has *no legitimate interest* in detaining . . . individuals who have been arrested without probable cause" generally beyond 48 hours. (*County of Riverside* v. *McLaughlin*, *supra*, 500 U.S. at p. 55 [114 L.Ed.2d at p. 62, 111 S.Ct. at p. 1669], italics added.) It is inconceivable that a "legitimate interest" could somehow spring into being when the individual in question turns out to be a juvenile.

The lead opinion also suggests that *Gerstein*'s promptness requirement, at least as defined by *McLaughlin*, is inapplicable to juveniles because their interest in freedom from restraint of liberty under the Fourth Amendment is assertedly less substantial than that of adults. But as stated, the basic criterion of the constitutional provision is "reasonableness." Extended restraint for a criminal offense in the absence of probable cause is no more reasonable for juveniles than adults. Arguably less so. In California at least, adults generally have the right to release on bail. (See Cal. Const., art. I, § 12; Pen. Code, § 1268 et seq.) Juveniles do not. (*Aubry* v. *Gadbois* (1975) 50 Cal.App.3d 470, 471-475 [123 Cal.Rptr. 365] (per Kaus, P. J.) [rejecting claims substantially based on, among other provisions, Cal. Const., art. I, § 12, and Pen. Code, § 1268 et seq.].) "[D]etaining . . . individuals who have been arrested without probable cause" beyond 48 hours is presumptively unreasonable. (*County of Riverside* v. *McLaughlin*, *supra*, 500 U.S. at pp. 55-56 [114 L.Ed.2d at p. 62, 111 S.Ct. at p. 1669].) It is unexplained how the individual's status as a juvenile can change the rule.

Similarly, the lead opinion suggests that *Gerstein*'s promptness requirement, at least as defined by *McLaughlin*, is inapplicable to juveniles because restraint of liberty under the juvenile court law is assertedly more limited than restraint of liberty under the criminal law. But what matters for *Gerstein* and *McLaughlin* is the *fact* of restraint and not its *character*. Indeed, as the *Gerstein* court itself observed, *"Even pretrial release* may be accompanied by burdensome conditions that effect a significant restraint of liberty." (*Gerstein* v. *Pugh, supra,* 420 U.S. at p. 114 [43 L.Ed.2d at p. 65], italics added.)

Most prominently, I believe, the lead opinion suggests that *Gerstein*'s promptness requirement, at least as defined by *McLaughlin,* is inapplicable to juveniles because the juvenile court law assertedly has more "procedural safeguards" than the criminal law. The short answer is that none of these "protections" even purports to be an equivalent for a prompt judicial probable cause determination. Indeed, the provisions cited by the lead opinion generally relate to the disposition of the detained juvenile within the juvenile system. *They do not primarily concern whether the juvenile ought to have been detained within the system in the first place.* That is the function of a prompt judicial probable cause determination. The cited "procedural safeguards" "protect" the juvenile who has been arrested without probable cause in much the same way as prison health and safety regulations "protect" an inmate who has been wrongfully convicted. They are too little, too late. In brief, they simply do not guarantee that a law-abiding juvenile wrongfully arrested without a warrant will regain his freedom within about 48 hours.

I acknowledge that in certain instances the probation officer appears obligated to investigate the question of probable cause. But, by definition, the prompt judicial probable cause determination mandated by the Fourth Amendment as construed by *Gerstein* and *McLaughlin* must be made by a *judicial* officer. Obviously, the probation officer is not such. He has responsibility to law enforcement, seeing that he is possessed of the "powers and authority conferred by law upon peace officers . . . ." (Welf. & Inst. Code, § 283.) The United States Supreme Court expressly recognized as much in *Fare* v. *Michael C.* (1979) 442 U.S. 707 [61 L.Ed.2d 197, 99 S.Ct. 2560], which dealt with the status of the probation officer under the juvenile court law. "[T]he probation officer is the employee of the State which seeks to prosecute the alleged offender. He is a peace officer, and as such is allied, to a greater or lesser extent, with his fellow peace officers. He owes an obligation to the State, notwithstanding the obligation he may also owe the juvenile under his supervision. In most cases, the probation officer is duty bound to report wrongdoing by the juvenile when it comes to his attention, even if by communication from the juvenile himself." (*Id.* at p. 720 [61 L.Ed.2d at p. 209]; accord, *In re Michael C.* (1978) 21 Cal.3d 471, 478-479

[146 Cal.Rptr. 358, 579 P.2d 7] (conc. opn. of Mosk, J.), revd. on other grounds *sub nom. Fare* v. *Michael C., supra,* 442 U.S. 707.) The probation officer's "responsibility to law enforcement is inconsistent with the constitutional role of a neutral and detached magistrate." (*Gerstein* v. *Pugh, supra,* 420 U.S. at p. 117 [43 L.Ed.2d at p. 67].)

What the lead opinion may mean to suggest in alluding to the "procedural safeguards" of the juvenile court law is that, in *Gerstein*'s words, "existing procedures . . . satisfy the requirement of the Fourth Amendment." (*Gerstein* v. *Pugh, supra,* 420 U.S. at p. 124 [43 L.Ed.2d at p. 71].) If it does, it is wrong. As stated, the cited "protections" simply do not guarantee that a law-abiding juvenile wrongfully arrested without a warrant will regain his freedom within about 48 hours.

The lead opinion next suggests that *Gerstein*'s promptness requirement, at least as defined by *McLaughlin,* is inapplicable to juveniles because it is assertedly incompatible with the " 'informality' and 'flexibility' that characterize juvenile proceedings . . . ." (*Schall* v. *Martin, supra,* 467 U.S. at p. 263 [81 L.Ed.2d at p. 216].) No such incompatibility, however, is apparent.

Plainly, the "informality" and "flexibility" of juvenile proceedings—both in American jurisdictions generally and in California specifically—are designed to make the process *more expeditious* than that of criminal actions, *not less.* The review by the lead opinion proves the point as to the juvenile court law. Thus, if any colorable attack could be mounted against *McLaughlin*'s definition of "promptness," it would be that it is *too long, not too short.*

Further, it is evident that a prompt judicial probable cause determination generally within 48 hours of a juvenile's warrantless arrest—like similar determinations routinely and quickly made on application for an arrest warrant—can readily be accommodated. I note that in a case such as this, the arresting officer must presently prepare a "concise written statement of . . . probable cause" "without necessary delay"—and specifically within 24 hours if the criminal offense in question is a misdemeanor. (Welf. & Inst. Code, § 626, subd. (d).) I also note, in words from *Gerstein,* that "[b]ecause the standards [for arrest and detention] are identical, ordinarily there is no need for further investigation before the [judicial] probable cause determination can be made." (*Gerstein* v. *Pugh, supra,* 420 U.S. at p. 120, fn. 21 [43 L.Ed.2d at p. 69].) Evidently, a longer "period of detention" is not required for the state "to take the administrative steps incident to arrest" for a juvenile than for an adult. (*Id.* at p. 114 [43 L.Ed.2d at p. 65].) Indeed, at oral argument on rehearing, counsel for respondent effectively conceded the point: a judicial probable cause determination, he admitted, is "not . . . difficult" to make.

It may be true, as the lead opinion asserts, that "when a minor is detained on suspicion of criminal activity, in contrast to an adult detained under similar circumstances, the inquiry into the propriety of the extended detention is much broader in scope"—and more "complex"—"than a determination, in the strict Fourth Amendment sense, of whether 'factual' probable cause exists to believe the minor committed the crime for which he was taken into custody." (Lead opn., *ante*, at pp. 1221-1222.) That this "inquiry" may be "broader" and more "complex" than probable cause is a result of the Legislature's policy choice and not federal constitutional compulsion. But this "inquiry" does indeed depend on probable cause *narrowly and simply defined*.

It may also be true, as the lead opinion asserts, that the so-called "factual probable cause determination is but one component of the broader inquiry . . . ." (Lead opn., *ante*, at p. 1224, italics omitted.) But this "component" is the first to be decided both in time and in logic.

To repeat: "A state has *no legitimate interest* in detaining . . . individuals who have been arrested without probable cause" generally beyond 48 hours (*County of Riverside* v. *McLaughlin, supra*, 500 U.S. at p. 55 [114 L.Ed.2d at p. 62, 111 S.Ct. at p. 1669], italics added)—whether or not such individuals have attained the age of majority. Surely, the state may have a "legitimate interest" in continuing to detain juveniles who have been arrested without probable cause beyond 48 hours when there exists a supported basis for doing so separate and independent from the unsupported suspicion of criminal activity, as for example the presence of sickness or injury that requires care (see Welf. & Inst. Code, § 305, subd. (d)). In such cases, the state may continue to detain without implicating *Gerstein* and *McLaughlin*.

The foregoing assessment of the feasibility of a prompt judicial probable cause determination generally within 48 hours of a juvenile's warrantless arrest is confirmed by experience. Petitioner represents, without dispute, that a number of the state's largest counties, including San Diego, Orange, Santa Clara, Sacramento, San Francisco, Fresno, and San Mateo, are successfully providing determinations of this kind. At oral argument on rehearing, counsel for respondent conceded that Los Angeles is doing the same, at least for most juveniles.

The lead opinion then suggests, most curiously, that *Gerstein*'s promptness requirement, at least as defined by *McLaughlin*, is inapplicable to juveniles because the commands laid down by the United States Constitution should yield to the preferences indicated in California law.

Of course, under the supremacy clause, the reverse is true.

Thus, the state may choose under the juvenile court law to fully investigate the circumstances of a detained juvenile, his parents, and his home before it decides whether and how to release him. (See Welf. & Inst. Code, § 628.) But it cannot extend the juvenile's detention as it pursues its investigation without a prompt judicial probable cause determination generally within 48 hours of his warrantless arrest—*which establishes whether the juvenile should have been detained in the first place*. To permit the state to grant itself such an extension would allow it to avoid the promptness requirement entirely—surely an untenable result. To repeat yet again: "A State has *no legitimate interest* in detaining . . . individuals who have been arrested without probable cause" generally beyond 48 hours (*County of Riverside* v. *McLaughlin, supra,* 500 U.S. at p. 55 [114 L.Ed.2d at p. 62, 111 S.Ct. at p. 1669], italics added)—whether or not such individuals have attained the age of majority.

In any case, the state's furtherance of the choices it has decided to pursue under the juvenile court law is not adversely affected by the Fourth Amendment's mandate of a prompt judicial probable cause determination generally within 48 hours of a juvenile's warrantless arrest.

The experience in Orange County appears typical. In a letter in support of the petition for review, the Orange County Public Defender represented that "[i]n response to [*McLaughlin*], law enforcement agencies . . . prepare and submit single page pre-printed forms which, when completed, summarize the basis of a warrantless arrest"; the "arresting agency . . . submits a 'probable cause' sheet to Juvenile Hall intake officers when booking a minor"; twice a day when court is in session and once a day when it is not, a judicial officer reviews the " 'probable cause' sheets," either directly or over the telephone, and "makes the necessary determination"; "[t]hroughout the foregoing procedures, the minor's normal Juvenile Hall routine is never interrupted or delayed and no changes have been made in this routine as a result of the above *McLaughlin* procedure"; "[a]t no time is the minor transported to a courtroom or holding area in conjunction with a 'probable cause' determination"; "[a]t no time is the district attorney or public defender's office consulted as to any probable cause determination"; the "determination is non-adversarial and there are no court appearances by the minor, counsel or any law enforcement personnel."

The lead opinion also implies that "promptness" for purposes of the prompt judicial probable cause determination mandated by the Fourth Amendment as construed by *Gerstein* and *McLaughlin* may be measured in terms of the time that is required for any given state to "take" whatever "steps" it chooses beyond those "incident to arrest" (*Gerstein* v. *Pugh, supra,*

420 U.S. at p. 114 [43 L.Ed.2d at p. 65]). That cannot be. As stated, a federal constitutional mandate that is designed to constrain the states cannot be dependent on such individual policy choices. Otherwise, that mandate would be rendered empty: each individual state would effectively be allowed to define "promptness" for itself.

One thing remains to be said. And it is important. The lead opinion's reasoning does not express the views of a majority of this court. As a result, its analysis "lacks authority as precedent" (*Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 918 [13 Cal.Rptr.2d 245, 838 P.2d 1198]) and hence cannot bind. Therefore, its mischief is limited to this case and to this case alone.

## VI

For the reasons stated, I conclude that *Gerstein*'s promptness requirement is indeed applicable to juveniles and that *McLaughlin*'s definition of "promptness" does in fact operate in this setting.

From this conclusion, it follows that petitioner's systemic Fourth Amendment challenge to the superior court's "official position" that *Gerstein*'s promptness requirement, at least as defined by *McLaughlin*, is not applicable to juveniles is successful.

I would therefore reverse the judgment of the Court of Appeal with directions to cause issuance of a peremptory writ of mandate compelling the superior court to comply with *Gerstein*'s promptness requirement as defined by *McLaughlin* with regard to juveniles as well as adults.

In closing, I quote, with minor modifications, Justice Scalia's final words in his dissenting opinion in *McLaughlin*.

"Justice Story wrote that the Fourth Amendment 'is little more than the affirmance of a great constitutional doctrine of the common law.' [Citation.] It should not become less than that. One hears the complaint, nowadays, that the Fourth Amendment has become constitutional law for the guilty; that it benefits the career criminal (through the exclusionary rule) often and directly, but the ordinary citizen remotely if at all. By failing to protect the innocent [juvenile] arrestee, today's [decision] reinforces that view. . . . Hereafter a law-abiding [juvenile] wrongfully arrested may be compelled to await the grace of a Dickensian bureaucratic machine, as it churns its cycle for up to [three] days—never once given the opportunity to show a judge that there is absolutely no reason to hold him, that a mistake has been made.

In my view, this is the image of a system of justice that has lost its ancient sense of priority, a system that few Americans would recognize as our own." (*County of Riverside* v. *McLaughlin, supra,* 500 U.S. at p. 71 [114 L.Ed.2d at p. 72, 111 S.Ct. at p. 1677] (dis. opn. of Scalia, J.).)

Accordingly, I dissent.

Kennard, J., and George, J., concurred.

**GEORGE, J.**—I respectfully dissent.

I previously have expressed my view that generally worded constitutional and statutory provisions typically do *not* lend themselves to application through fixed, mechanical rules established by judicial decree.[1] The United States Supreme Court has spoken in the present context, however, holding in *County of Riverside* v. *McLaughlin* (1991) 500 U.S. 44, 56-58 [114 L.Ed.2d 49, 63-64, 111 S.Ct. 1661, 1670], that a state's criminal statutory scheme does not comply with the Fourth Amendment unless it provides that a "person" (without differentiation between adults and juveniles), arrested and detained without a warrant, will be afforded a judicial determination of probable cause within 48 hours of arrest. That federal constitutional rule is now settled and, of course, binding upon this court.

Although, as the lead opinion recognizes, the procedures constitutionally mandated in juvenile proceedings need not mirror in all respects the procedures required in adult criminal proceedings, I agree with Justice Mosk's conclusion that the People have not identified any state interest that would justify incarcerating a juvenile, detained solely because law enforcement authorities believe he or she has committed a crime, for a period of time (before according the juvenile an impartial judicial determination of probable cause) longer than the time the state could detain an adult under similar circumstances. Indeed, in this context, I believe the need for a very prompt judicial determination of probable cause may be a more crucial factor in assessing the "reasonableness" of the "seizure" of a juvenile than of an adult, because the consequences of even a relatively brief, wrongful incarceration are likely to be more detrimental and long-lasting to an innocent, vulnerable child than to an innocent adult. (See, e.g., *In re William M.* (1970) 3 Cal.3d 16, 31, fn. 25 [89 Cal.Rptr. 33, 473 P.2d 737].) In my view, the lead opinion's conclusion to the contrary is not supported either by *Schall* v. *Martin* (1984) 467 U.S. 253 [81 L.Ed.2d 207, 104 S.Ct. 2403], or the very

---

[1] With reference to the statutory mandate that an adult suspect be taken before a magistrate for arraignment without unnecessary delay and within two days of arrest, see *Youngblood* v. *Gates* (1988) 200 Cal.App.3d 1302, 1343-1350 [246 Cal.Rptr. 775] (dis. opn. of George, J.).

recent decision in *Reno* v. *Flores* (1993) 507 U.S. __ [123 L.Ed.2d 1, 113 S.Ct. 1439], because neither case purported to address the propriety of an extended detention of a juvenile who could be released to the custody of his or her family but has been detained solely because he or she is suspected of committing a crime.

Petitioner's application for review by the Supreme Court was denied March 18, 1994, and the opinion was modified to read as printed above. Mosk, J., Kennard, J., and George, J., were of the opinion that the application should be granted.